Regina WARSHAW and John D. Kaufman, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

XOMA CORPORATION; Steven C. Mendell, Defendants–Appellees.

Nos. 94–16271, 94–16297.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 8, 1996.*

Decided Jan. 25, 1996.

---

* The panel unanimously found this case suitable for decision without oral argument. Fed. R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Eric A. Isaacson, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, California, Reed R. Kathrein, Milberg, Weiss, Bershad, Hynes & Lerach, San Francisco, California, Alan R. Plutzik, Gold & Bennett, San Francisco, California, and Irving Malchman, Kaufman, Malchman, Kirby & Squire, New York City, for plaintiffs-appellants.

Anthony I. Fenwick, Latham & Watkins, San Francisco, California and Laurence A. Silverman, Cahill, Gordon & Reindel, New York City, for defendants-appellees.

Before: LAY,** GOODWIN, and PREGERSON, Circuit Judges.

** The Honorable Donald P. Lay, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit.

PREGERSON, Circuit Judge:

This is a class action brought under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated by the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5. The district court allowed plaintiffs to amend their complaint three times and then dismissed the third amended complaint (the Complaint) under Fed.R.Civ.Pro. 12(b)(6) for failure to state a claim upon which relief can be granted.

We review a district court's 12(b)(6) dismissal of a federal securities claim de novo. *Holden v. Hagopian,* 978 F.2d 1115, 1118 (9th Cir.1992). Our review is limited to the contents of the complaint. *Argabright v. United States,* 35 F.3d 472, 474 (9th Cir. 1994). We take as true all allegations of material fact stated in the complaint and construe them in the light most favorable to the nonmoving party. *National Wildlife Federation v. Espy,* 45 F.3d 1337, 1340 (9th Cir.1995).

We have jurisdiction under 28 U.S.C. § 1291. We reverse and remand.

## BACKGROUND

For the purposes of reviewing this 12(b)(6) dismissal, we relate the facts in this case as stated in the Complaint.

Xoma Corporation is a biotech company that develops and produces protein therapeutic pharmaceuticals based on DNA technology. Complaint ¶¶ 6, 14. Steven Mendell is Xoma's chief executive officer. Complaint ¶ 7. Before 1992, the United States Food and Drug Administration (FDA) had never approved any Xoma-developed drugs. As a result, Xoma had never made a profit on its research. Complaint ¶ 15. Xoma's financial success depended on FDA approval of the drug "E5." Complaint ¶¶ 16–17, 25–26. According to Xoma, E5 is "an anti-endotoxin monoclonal antibody designed to treat gram-negative sepsis, an acute illness that is a major cause of death and serious disease in hospitalized patients." Appellee's Brief at 6; *see* Complaint ¶ 6. Prompt FDA approval of E5 in 1992 would have allowed Xoma to capture the lucrative sepsis-treatment market. Complaint ¶¶ 24–25.

Plaintiffs represent a class of persons who purchased Xoma common stock between March 2, 1992 and June 3, 1992. Complaint ¶ 5. During this period, plaintiffs assert that Xoma made repeated assurances that FDA approval of E5 was "imminent." Complaint ¶ 2. The Complaint asserts that Xoma intentionally made these reassuring public statements even after serious doubts were raised about E5's effectiveness and the chances for prompt FDA approval. Complaint ¶¶ 34–35. Xoma's reassurances about E5, according to the Complaint, catalyzed a rapid rise in Xoma share prices as stock analysts and the press reacted positively to Xoma's confidence that E5 would be approved. Complaint ¶¶ 39–42. An abbreviated chronology of the events as stated in the Complaint is as follows.

On March 2, 1992, a securities analyst for Oppenheimer and Co., Inc., Jeffrey Casdin, reported that there was "no hope for any approval of E5." Complaint ¶ 34. Casdin based his report on his examinations of data from two "Phase III" clinical studies of E5 that had been presented to the FDA advisory committee on September 4, 1991. He reported a disturbing possibility that "E5 actually increases mortality in a large percentage of gram-negative sepsis patients." Complaint ¶ 34. Casdin also expressed doubts on whether "the FDA would allow a meta-analysis combining this [second Phase III] study with the previous Phase III study to overcome a glaring safety issue." Complaint ¶ 34.

On the same day, Xoma responded to Casdin's criticisms over *Dow Jones News Wire.* Dr. Patrick Scannon, then President of Xoma and Vice Chairman for scientific and medical affairs, attacked Casdin's report as "scientifically wrong" and "irresponsible." Complaint ¶ 35. He allayed shareholders fears about FDA approval, stating "everything is going fine." Complaint ¶ 35.

On April 14, 1992, Xoma issued a press release that announced that the FDA had rejected the first Phase III study of E5. Complaint ¶ 37. This announcement triggered a downward slide in Xoma stock price.

Complaint ¶ 37. On the same day, CEO Mendell and Dr. Scannon issued a series of statements to reassure the market. Mendell stated that the market's "concerns are unfounded; we think the market misunderstood the earlier announcement and overreacted to it." Complaint ¶ 37. Scannon announced that the negative news

> does not in any way imply a delay or setback in the agency's review of E5. In fact, we are encouraged by the progress FDA is making in its review.... When the two trials are combined, we believe the safety and effectiveness of E5 is clearly demonstrated.

Complaint ¶ 37. Mendell also told Reuters news service that the FDA's notification "shows positive forward progress." Complaint ¶ 37. On May 5, 1992, Mendell made similar optimistic statements regarding the safety of E5 and the "positive forward progress" of the FDA review. Complaint ¶ 40; *see generally* Complaint ¶¶ 37–43.

The market responded favorably to Xoma's assurances that E5 was safe, effective and that FDA approval of the drug was "imminent." Complaint ¶ 43. Based on these statements and information from Xoma, other securities analysts began to give favorable evaluations of Xoma stock. Complaint ¶¶ 43–43C. These endorsements resulted in an upward movement in Xoma stock price. Xoma stock rose to a high of 23 points on May 22, 1992. Complaint ¶ 39B. Part of this rise in the value of Xoma stock was attributable to the analysts' reports that E5 would be approved by the FDA. Complaint ¶¶ 43B–43C.

On June 4, 1992, the FDA denied approval of E5 because it found the Phase III clinical studies to be inconclusive. Mendell issued a statement reported over *Dow Jones News Wire* that the FDA had advised Xoma that "based on their review, they felt there wasn't sufficient efficacy." Complaint ¶ 45. On this news, Xoma stock plummeted and lost twenty-four percent of its value. It was the most actively traded NASDAQ stock for that day. Complaint ¶ 47. On June 11, Xoma announced that the FDA required additional information and analyses; this process would delay approval for months if not years. Complaint ¶ 48. Delayed approval greatly diminished Xoma's chances of capturing the sepsis-treatment market. Xoma was trading at 6 points per share when the Complaint was filed. Complaint ¶ 48.

The Complaint alleges in Count I that Xoma and CEO Mendell knew during this course of events that there was no chance for timely FDA approval of E5. Complaint ¶¶ 51–54. The Complaint asserts that Xoma's statements and failure to inform the public of shortcomings in its E5 analyses, when taken in context, were part of an intentional and fraudulent omission of material information. Complaint ¶¶ 52–54. In short, the Complaint asserts that Xoma manipulated the market by intentionally issuing the "false and misleading representations and omissions described above." Complaint ¶ 53.

The district court dismissed the Complaint with prejudice. The court explained that the Complaint failed to allege facts sufficient to state a claim under section 10(b) and rule 10b–5. Plaintiffs now appeal.

## DISCUSSION

Defendants argue that we should affirm the dismissal on two independent grounds: (1) the Complaint does not meet 12(b)(6) requirements for stating a claim under the federal securities laws; and (2) the Complaint fails to meet Fed.R.Civ.Pro. 9(b) pleading requirements. We address each argument in turn.

### I.

■ Our recent decision in *Fecht v. The Price Co.*, 70 F.3d 1078 (9th Cir.1995), clarifies the standard to be applied by the trial court in deciding a 12(b)(6) motion to dismiss a federal securities claim.[1] *Fecht* controls the disposition of this case.

In *Fecht*, the plaintiffs asserted in their complaint that a "mix" of statements and

---

**1.** We had not decided *Fecht* when the district court ruled on Xoma's 12(b)(6) motion to dismiss.

omissions by securities analysts and Price officials misrepresented the actual financial position of the company. 70 F.3d at 1081. These misrepresentations, the *Fecht* plaintiffs argued, were fraudulent because they gave Price shareholders the false impression that Price was financially strong. *Id.* at 1080. Specifically, stock analysts and Price officials issued optimistic statements about Price's future, even though a truthful analysis of the company's financial position indicated otherwise. *Id.* at 1080–81. We explained that even optimistic statements, when taken in context, might constitute a basis for a claim under section 10(b) and rule 10b–5. *Id.* at 1080.

Here, the district court decided that the Complaint failed to allege that Xoma had made false or misleading statements. The district court rejected the plaintiffs' argument that Xoma's comments, taken as a whole and in context, misled Xoma shareholders. But if we construe the facts alleged in the Complaint in the light most favorable to plaintiffs, under *Fecht,* the Complaint survives a 12(b)(6) motion.

Plaintiffs allege in the Complaint that Xoma knew, based on its clinical studies, that E5 might not work and would never be approved by the FDA. Despite these facts, the Complaint asserts, Xoma made misleading, optimistic public statements that the E5 FDA-approval process was progressing positively. For instance, in response to market fears about FDA approval, Xoma's president flatly stated that "everything [was] going fine." Complaint ¶ 35. Such general statements of optimism, when taken in context, may form a basis for a securities fraud claim under *Fecht,* 70 F.3d at 1080.

■ We are not convinced that Xoma adequately qualified its optimism about E5 approval so as to find safe harbor under the "bespeaks caution" doctrine. *See In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1413 (9th Cir.1994). It is true that at times defendants publicly declined to "speculate" over FDA approval of E5. It is also true that Xoma SEC filings did disclaim, in general terms, the risks of failure involved in the FDA process. But under *Durning v. First Boston Corp.,* 815 F.2d 1265 (9th Cir.1987),

our inquiry does not end there. Only if a disclosure was "so obvious that reasonable minds could not differ" can the issue of whether shareholders have been adequately cautioned about the risks be settled as a matter of law. *Fecht,* 70 F.3d at 1081 (citing *Durning,* 815 F.2d at 1268). Moreover, inclusion of some cautionary language in a company's disclosures is "not enough to support a determination as a matter of law that defendant's statements were not misleading." *Fecht,* 70 F.3d at 1081. In *Fecht,* we rejected defendant Price's argument that the 12(b)(6) dismissal was warranted simply because of Price's "[i]nclusion of some cautionary language" in its disclosures. *Id.* We explained that only if " 'reasonable minds' could not disagree that the challenged statements were not misleading" should the district court dismiss under 12(b)(6). *Id.* If, as the Complaint alleges here, Xoma engaged in a series of intentionally misleading public statements, then "reasonable minds" could have differed with regard to the adequacy of Xoma's general disclaimers. Complaint ¶ 52. Given these factual allegations, we believe dismissal was inappropriate.

■ We also believe that if defendants intentionally misled securities analysts and the press in order to stave off a Xoma stock sell off, then these third-party reports would be relevant to determine Xoma's securities fraud liability. The Complaint asserts that Xoma intentionally used these third parties to disseminate false information to the investing public. Complaint ¶¶ 43–43C, 54. If this is true, Xoma cannot escape liability simply because it carried out its alleged fraud through the public statements of third parties. The Complaint should not have been dismissed under 12(b)(6), without a contextual, "delicate assessment" of the facts presented—including the statements of third-party analysts. *Fecht,* 70 F.3d at 1080–81 (quoting *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976)).

In short, we follow *Fecht.* The Complaint alleges that Xoma's optimistic statements about E5, when taken in context, were designed to prevent shareholder flight in the aftermath of a damaging report regarding

the possible hazards of E5 and the unlikelihood of FDA approval. These optimistic statements allegedly contravened the unflattering facts in Xoma's possession. On these facts, we believe the Complaint alleged a sufficient basis for a claim under section 10(b) and rule 10b–5.

## II.

 The Complaint also complies with Rule 9(b)'s requirement to allege adequately the "circumstances constituting fraud." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir.1995) (en banc).

In *GlenFed* we explained that a plaintiff must plead evidentiary facts that support inferences sufficient to meet the specificity requirements of Rule 9(b). Useful for our analysis of the case before us is a hypothetical offered in *GlenFed:*

> a plaintiff might allege that he bought a house from defendant, that the defendant assured him that it was in perfect shape, and that in fact the house turned out to be built on a landfill, or in a highly irradiated area; plaintiff could simply set forth these facts (presumably along with time and place), allege scienter in conclusory fashion, and be in compliance with Rule 9(b).

42 F.3d at 1548. The case before us is similar. Plaintiffs bought stock in Xoma Corporation. Xoma assured them that their principal product, E5, was in perfect shape with respect to safety and FDA approval. But E5 turned out to be useless and never approved by the FDA. Xoma stock lost most of its value. These assurances took place between March 2 and June 4, 1992, and the defendants knew they were largely untrue. Just on this skeletal analysis, we have no trouble deciding that the Complaint meets the Rule 9(b) standard set forth in *GlenFed. See Fecht,* 70 F.3d at 1083.

Nor does a deeper analysis convince us that the Complaint should be dismissed under 9(b). "In a securities fraud action, a pleading is sufficient under Rule 9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer." *Kaplan v. Rose,* 49 F.3d 1363, 1370 (9th Cir.1994). This requires alle-

gations of "time, place and nature of the alleged fraudulent activities." *Walling v. Beverly Enters.,* 476 F.2d 393, 397 (9th Cir. 1973). It also requires explanation as to what is false or misleading about the statement. *GlenFed,* 42 F.3d at 1548. On the facts presented in the Complaint, it is not impossible to understand plaintiff's allegations. The Complaint alleges several optimistic public statements made by Xoma, its officers, the press, and securities analysts, between the dates of March 2, 1992 and June 4, 1992. The Complaint asserts that the defendants knew that the facts contravened their "optimistic" statements that E5 was safe, effective, and would be approved by the FDA. In this case, we easily conclude that the Complaint satisfied Rule 9(b) requirements. *See Fecht,* 70 F.3d at 1083.

### CONCLUSION

Applying our decision in *Fecht* to the facts here, we determine that plaintiffs' Complaint set forth a claim upon which relief could be granted. Dismissal under Rule 12(b)(6) was therefore inappropriate. Under *GlenFed,* plaintiffs satisfied the specificity requirement of Rule 9(b).

REVERSED and REMANDED to the district court for further proceedings consistent with this opinion.