Robert POWERS, et al., Plaintiffs,

v.

Paul EICHEN, et al., Defendants.

No. 96–1431–B (AJB).

United States District Court, S.D. California.

March 14, 1997.

Order Granting Reconsideration, May 23, 1997.

William S. Lerach, Jan Adler, Jennifer Wells, Milberg, Weiss, San Diego, CA, for Plaintiffs.

William Grauer, Robert Brownie, Mark Hamer, Gray, Cary, Ware & Freidenrich, San Diego, CA, for Defendants.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS EICHEN, OLSON, WHITTLER, PROXIMA, VOGT, TAMKIN, ZOELLER, AND MINICH'S MOTION TO DISMISS AND GRANTING SEIBER, JOHNSON, NASH, THOMAS AND PARKER'S MOTION TO DISMISS

BREWSTER, District Judge.

On March 3, 1997, the above-entitled action came on for hearing upon Defendants' motions to dismiss the complaint pursuant to Rule 12(b)(6) or 9(b). Upon due consideration of the moving and responding papers and the arguments of counsel therein, and for the reasons discussed below, the Court hereby DENIES in part and GRANTS in part Defendants Eichen, Olson, Whittler and Proxima's motion to dismiss, DENIES in part and GRANTS in PART Defendants Vogt, Tamkin, Zoeller, and Minich's motion to dismiss, and GRANTS Defendants Seiber, Johnson, Nash, Thomas and Parker's motion to dismiss.

## I. BACKGROUND

### A. Procedural and Factual Background

Proxima Corporation (Proxima) is a San Diego based high-tech company that designs and manufactures multimedia projection equipment that allows users to project images and video directly from a computer or VCR onto a large screen. The instant action is a class action filed on behalf of all purchasers of Proxima common stock between July 26, 1994 and August 17, 1995 (the Class Period). Plaintiffs claim that during the Class Period the Defendants[1] artificially inflated Proxima stock by falsely representing that Proxima had successfully developed and was introducing new products which would lead to substantial revenue and earnings gains throughout Fiscal 1996 and 1997, and that the development of Proxima's new microlaser projector products was also succeeding and on schedule.

In the complaint, Plaintiffs list 40 allegedly false and misleading statements that form the basis of Plaintiffs' claim for violation of Rule 10b–5. These statements were made in a variety of settings and by numerous different people, including statements in (1) press releases, (2) shareholder reports, (3) newspaper articles, (4) analysts' reports, and (5) statements made at trade conferences. Plaintiffs allege that the individual Defendants "were each aware of and approved the false statements issued by or on behalf of Proxima during the Class Period." (Compl. ¶ 23). These statements are grouped together into five different time periods. (Compl. ¶¶ 46, 55, 59, 65, 78). Following each grouping, Plaintiffs list the reasons why these statements were false and misleading when made. The reasons all relate to information

1. The Defendants named in the complaint include: (1) Proxima Corp., (2) Kenneth E. Olson, CEO and Chairman of the Board of Directors of Proxima, (3) Paul Eichen, President, CEO and a director of Proxima through April 1995, when he left Proxima, (4) Robert Johnson, outside director of Proxima, (5) Frederick Parker, an officer of Newpoint Corp., a subsidiary of Proxima, (6) Michael Vogt, Vice President of International Sales of Proxima, (7) Michael Tamkin, Vice President–Manufacturing of Proxima, (8) Dennis Whittler, Vice President–Finance and Chief Financial Officer of Proxima, (9) Mary Zoeller, Vice President–Marketing of Proxima, (10) Arthur Minich, Vice President–Research and Development and Chief Technical Officer of Proxima, (11) John Seiber, outside director of Proxima, (12) Jeffrey Nash, outside director of Proxima, and (13) John Thomas, employee of Newpoint Corp.

that Plaintiffs allege the Defendants "knew based on their access to material non-public corporate data," but failed to disclose at the time the positive and reassuring statements were made to the public. Plaintiffs contend that at the time that the statements were made the Defendants knew:

(1) that Proxima was not on schedule or making any progress in developing a microlaser projector due to technical and other difficulties and therefore would not be able to produce a laser projection product in the foreseeable future;

(2) that Proxima's microlaser projection product development efforts with Laser Power Corporation were a failure, as those efforts were not making any real or significant progress in developing a commercially feasible projection product;

(3) that Proxima's ongoing investment in Laser Power Corporation to develop a laser projection product was gravely impaired due to the complete lack of success of Laser Power Corporation to make progress in developing a commercially feasible laser projection product and that such investment would likely have to be written down or written off in the foreseeable future which would have an adverse impact on Proxima's earnings;

(4) that Proxima was encountering serious and persistent difficulties in completing the development of its DP5100 product due to the inability of its OEM Hitachi to obtain adequate supplies of polysilicon glass panels of sufficient quality to manufacture that product in commercial quantities;

(5) that Proxima's OEM for its DP5100 product was unable to manufacture commercial quantities of that product due to its inability to obtain adequate supplies of polysilicon glass panels for that product from its supplier;

(6) that Proxima was unable to manufacture commercial quantities of its new 500 lumen DP2900 projector due to an inability to obtain adequate supplies of the metal halide lights for that product;

(7) that Proxima was unable to manufacture commercial quantities of its DP2710 desktop projector due to component part shortages;

(8) that Proxima was unable to manufacture commercial quantities of its DP2810 product line due to component part shortages;

(9) that Proxima's product introduction and shipment dates for its DP5100, DP2710, DP2810 and DP2900 products were illusory and completely unrealistic because Proxima was not able to manufacture commercial quantities of those products due to component part shortages for them;

(10) that Proxima would not be able to gain market share during Fiscal 1996 as it was unable to introduce in a timely fashion the new brighter, lighter-weight projection products necessary for it to maintain its competitive position and gain market share;

(11) that Proxima was losing market share to In–Focus Systems due to Proxima's inability to introduce the DP5100 product in a timely fashion;

(12) that Proxima's competitive position was weakening and being undermined due to its inability to develop and introduce in a timely fashion its DP5100 product;

(13) that Proxima's product research and development activities were very troubled and were failing to make adequate progress in developing new products in a timely fashion which were indispensable for Proxima to gain market share, maintain its competitive position and generate the revenues necessary to meet the revenue and earnings forecasts being made by and for it; and

(14) that defendant Paul Eichen was not leaving Proxima out of a desire to start a new company but rather because he knew that Proxima's competitive position was gravely impaired due to the difficulties it was having in developing new products and that this would result in serious problems for the Company in the near term.

Despite the numerous positive and encouraging statements being publicly made by Proxima, Plaintiffs allege that on August 17, 1995, Proxima "shocked the market" by revealing that its Fiscal 1996 Earnings Per Share (EPS) were going to be much worse than forecast due to its inability to produce in quantity its DP5100, DP2710, DP2810 and

DP2900 products. Proxima revealed that (i) Hitachi, which manufactured the DP5100 product for Proxima, could not successfully manufacture the poly-silicon based product in volume because it could not obtain a supply of polysilicon glass, requiring Proxima to attempt to locate a second source of supply of polysilicon glass; (ii) it could not obtain enough metal halide lamps for its DP2900 product line; and (iii) it was suffering from component supply problems for its DP2710 and DP2810 flagship products and, as a result, sales of these products would be well below expectations during fiscal 1996. (Compl.¶ 79). As a result of this announcement, Proxima's stock fell over seven dollars per share. *Id.*

Beyond the alleged false and misleading statements, Plaintiffs additionally allege that the individual Defendants willfully participated in a scheme and fraudulent course of business that defrauded and damaged Class members by selling off their stock at artificially inflated prices. Plaintiffs chart the Defendants' sale of stock in the complaint. (Compl.¶ 13).

Defendants now move this Court to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Defendants filed two separate motions to dismiss. One motion was filed on behalf of Defendants Proxima, Eichen, Olson, and Whittler. The other motion was filed on behalf of Defendants Johnson, Parker, Tamkin, Vogt, Zoeller, Minich, Seiber, Thomas and Nash. The second group of Defendants also joined in the motion filed by the first group.

## II. DISCUSSION

A. Standard of Law

### 1. Motion to dismiss under 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. A claim can only be dismissed without leave to amend if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to plaintiff. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986); *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). The court need not, however, accept every allegation in the complaint as true; rather, the court "will examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian,* 978 F.2d 1115, 1121 (9th Cir.1992) (citation omitted).

■ In addition, when deciding a motion to dismiss, a court may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.), *cert. denied,* 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994). The court may also consider any matter that is subject to judicial notice, such as public records. *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986).

### 2. Heightened Pleading Standard of Rule 9(b)

■ At the pleading stage, a court may also dismiss a section 10(b) claim under Federal Rule of Civil Procedure 9(b). Rule 9(b) imposes heightened pleading requirements by requiring that a plaintiff plead the alleged fraud with particularity. The Ninth Circuit discussed the requirements of Rule 9(b) in *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985), stating:

> Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.

Rule 9(b) also requires that the plaintiff plead with sufficient particularity attribution of the alleged misrepresentations or omissions to each defendant; the plaintiff is obligated to "distinguish among those they sue and enlighten each defendant as to his or her

part in the alleged fraud." *Bruns v. Ledbetter,* 583 F.Supp. 1050, 1052 (S.D.Cal.1984).

### 3. Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)

To state a claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, the plaintiff must allege that there has been (1) a misstatement or omission (2) of material fact, (3) made with scienter, (4) on which the plaintiff relied, which (5) proximately caused his or her injury. *McCormick v. Fund American Companies, Inc.,* 26 F.3d 869, 875 (9th Cir. 1994); *McGonigle v. Combs,* 968 F.2d 810, 817 (9th Cir.), *cert. dismissed,* 506 U.S. 948, 113 S.Ct. 399, 121 L.Ed.2d 325 (1992).

### B. Analysis of Plaintiffs' 10b–5 claims

#### 1. Falsity of the Statements when made

■ The Defendants claim that the 10b–5 action against all of the Defendants should be dismissed because the Plaintiffs have not sufficiently pled that the alleged false and misleading statements were false or misleading *when made* or that the alleged omissions render the statements false and misleading *when they were made.* Under the Private Securities Litigation Reform Act of 1995 (PSLRA), to plead the existence of a false or misleading statement or omission, a complaint must specify: (a) each statement alleged to have been misleading and (b) the reason or reasons why the statement is misleading. 15 U.S.C. § 78u–4(b)(1). Even before the Reform Act, the Ninth Circuit held:

[T]o allege fraud with particularity, . . . [t]he plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false and misleading . . . .

*In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994).

Using the *GlenFed* standard, the Ninth Circuit in *Warshaw v. Xoma Corp.,* 74 F.3d 955 (9th Cir., 1996), held that the Plaintiffs' complaint easily survived a motion to dismiss. In *Warshaw,* the plaintiffs alleged that:

Plaintiffs bought stock in Xoma Corporation. Xoma assured them that their principal product, E5, was in perfect shape with respect to safety and FDA approval. But E5 turned out to be useless and never approved by the FDA. Xoma lost most of its value. These assurances took place between March 2 and June 4, 1992, and the defendants knew they were largely untrue.

*Id.* at 960.

On these allegations, the Court held that:

The Complaint alleges several optimistic public statements made by Xoma, its officers, the press, and securities analysts, between the dates of March 2, 1992 and June 4, 1992. The Complaint asserts that the defendants knew that the facts contravened their "optimistic" statements that E5 was safe, effective, and would be approved by the FDA. In this case, we easily conclude that the Complaint satisfied Rule 9(b) requirements.

*Id.*

The allegations in the instant case are very similar to those in *Warshaw.* In the instant complaint, Plaintiffs allege that Proxima made several optimistic public statements between July 24, 1994 and August 17, 1995. The Complaint breaks these statements into five different time periods and alleges that during each of these time periods, the Defendants knew that Proxima was actually suffering from component part and supply shortages and scheduling difficulties, which would hinder the company's ability to stay competitive. Based on these omissions, Plaintiffs contend that the Defendants' statements were false and misleading *when they were made. See* Compl. ¶¶ 46, 55, 59, 65 and 78. Additionally, paragraph 8 of the complaint identifies the problems in development and manufacturing that Proxima was experiencing and alleges that "[a]s a result, defendants *knew at the beginning of the Class Period* that Proxima was encountering serious and persistent problems in readying these important new products for the market . . . ." (emphasis added).

The Court finds that these allegations are sufficient to satisfy the requirement of the

PSLRA that a plaintiff's complaint contain: (a) each statement alleged to have been misleading and (b) the reason or reasons why the statement is misleading. 15 U.S.C. § 78u–4(b)(1). As the allegations cited above indicate, Plaintiffs have indicated each alleged misstatement and have given the reasons why the statement was misleading *when made.* Therefore, Defendants' contention that Plaintiffs have not alleged that the statements were false when made as required by the PSLRA fails.

### 2. Scienter

Another argument asserted by Defendants is that Plaintiffs have failed to plead scienter with the particularity required as a result of the enactment of the PSLRA. On December 22, 1995, Congress passed the Private Securities Litigation Reform Act of 1995 to "protect investors, issuers, and all who are associated with our capital markets from abusive securities litigation," and to "implement[ ] need[ed] procedural protections to discourage frivolous litigation." H.R. Conf. Rep. 104–369, 104th Cong., 1st Sess. 31, 32 (1995). As part of its mission to curb the filing of lawsuits "with only the faint hope that the discovery process might lead eventually to some plausible cause of action," *id.,* the PSLRA strengthened the pleading requirements otherwise required by Rule 9(b). Specifically, Section 21D(b)(2) provides that in private Rule 10b–5 actions, "the complaint shall, with respect to each act or omission alleged to violate this title, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). If a plaintiff's pleadings fail to satisfy this requirement, dismissal is mandated. 15 U.S.C. § 78u–4(b)(3). The PSLRA effectively overturned the Ninth Circuit's lenient scienter pleading requirement enunciated in *In re GlenFed, Sec. Lit.,* 42 F.3d 1541, 1548–49 (9th Cir.1994) (en banc).

To date, neither the Ninth Circuit nor any other federal appellate court has interpreted

Section 21D(b)(2). The only available decisions interpreting and applying this section of the PSLRA appear to come from three California federal district court cases.[2] Two of these decisions take the position that the PSLRA merely codified the scienter pleading standard derived from Second Circuit case law. *See Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.,* 927 F.Supp. 1297, 1310 (C.D.Cal.1996); *Zeid v. Kimberley,* 930 F.Supp. 431, 437 (N.D.Cal.1996). At the time the PSLRA was passed, scienter could be established in the Second Circuit (1) "by alleging facts to show that defendants had both motive and opportunity to commit fraud," or (2) "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994).

The third case, while acknowledging that Congress used the Second Circuit standard as its reference point, concluded by reviewing the legislative history that the PSLRA adopted a much more demanding standard. *In re Silicon Graphics, Inc. Sec. Lit.,* 1996 WL 664639, *5–6 (N.D.Cal.1996). The *Silicon Graphics* court quoted the Conference Committee report which stated that "[b]ecause the Conference Committee intends to strengthen the existing pleading requirements, it does not intend to codify the Second Circuit's case law interpreting this pleading standard." *Id.* at *5 (*quoting* H.R. Conf. Rep. No. 104–369, 104th Cong., 1st Sess. 41 (1995)). In addition, a footnote in the Conference Committee report stated that "[f]or this reason, the Conference Report chose not to include in the pleading standard certain language relating to motive, opportunity, or recklessness." *Id.* The court also noted that the Conference Committee rejected amendments to the bill that would have permitted plaintiffs to plead "motive and opportunity" and "recklessness."

The *Silicon Graphics* court further highlighted the fact that President Clinton vetoed

---

**2.** In January of this year, another opinion, *Rehm v. Eagle Fin. Corp.,* 954 F.Supp. 1246 (N.D.Ill. 1997), from the Northern District of Illinois, held that the Private Securities Litigation Reform Act adopts the Second Circuit standard for pleading scienter. An unpublished order from the North-

ern District of Texas also agreed with the *Marksman* court and applied the Second Circuit test to determine whether the plaintiff had sufficiently pled scienter. *See STI Classic Fund v. Bollinger Indus,, Inc.,* CA 3: 96–CV–0823–R, slip. op. at 2, 1996 WL 866699 (N.D.Tex. Nov. 12, 1996).

the PSLRA. In his message to Congress, he indicated that he was prepared to support the Second Circuit's pleading standard, but "the conferees make crystal clear ... their intent to raise the standard even beyond that level. I am not prepared to accept that." *Id.* (*quoting* H.R. Doc. No. 104–150, 104th Cong., 1st Sess. 240 (1995)). The court noted that in "[f]urther emphasizing its 'crystal clear' intent to heighten the pleading standard, Congress overrode the veto." *In re Silicon Graphics,* 1996 WL 664639 at *5.

In light of this legislative history, the district court in *Silicon Graphics* concluded that Congress intended to abolish the Second Circuit's "motive and opportunity" prong altogether, and to eliminate "recklessness" from the other prong. Thus, the court held that to establish scienter, "plaintiff must allege specific facts that constitute circumstantial evidence of conscious behavior by defendants." *Id.* at *6. This Court agrees with the reasoning cited in *Silicon Graphics* and adopts the stricter pleading standard for scienter. However, even given this heightened pleading standard, the factual allegations pled in Plaintiffs' complaint create strong circumstantial evidence that the Defendants acted with intent to defraud. For the reasons below, the Court finds that Plaintiffs have met the applicable pleading standard for scienter.

### a. Allegations of Deception

Throughout Plaintiffs' complaint, they allege that the Defendants were lying about the progress of their upcoming products and ability to produce the products in a timely manner. They ·cite numerous conditions, such as supply and component part shortages, that Defendants allegedly knew were existing, yet failed to disclose to the investing public. These allegations, coupled with the circumstantial evidence described below, creates a strong inference that the Defendants acted with intent to defraud.

### b. Stock Sales

In their complaint, Plaintiffs chart the stock sales made by the individual Defendants during the Class Period. (Compl.¶¶ 12–13). A review of this chart and the individual sales of Defendants Olson, Eichen and Whittler (the three Defendants alleged to have directly made false and misleading statements) reveals that each of these Defendants sold a significant portion of their stock while the price was allegedly inflated. Eichen sold 100% of his stock,[3] Olson sold 40% of his stock and whittler sold 30%. Plaintiffs allege that these sales are unusual and raise a strong inference of the Defendants' knowledge and intent in making optimistic statements about Proxima because none of the Defendants had sold off any of their stock since the initial public offering (IPO) until the stock price increased during the Class Period, allegedly due to the Defendants' false and misleading statements. (Compl.¶3). The allegation of the Defendants' stock sales during the Class Period serves as circumstantial evidence that the Defendants knew that the Proxima stock prices would soon drop because the company was experiencing serious difficulties getting its DP products to the market. Essentially, Plaintiffs allege Defendants were selling high because they "knew" that the stock would fall as soon as the "problems" with production were announced.

### c. Proximity of Optimistic Statements to date of Bad News

In addition, Plaintiffs argue that the short time lapse between the alleged false statements and the announcement of Proxima's problems indicates that the Defendants knew the prior statements were false. As late as July 24, 1995 (3 weeks before the announcement), Proxima represented that the production of its DP5100 and its DP2900 would improve sharply within a month. (Compl.¶ 73). However, within that same month, Defendants made their announcement that the products would be delayed due to various component part and production problems. The proximity of the "bad news" to the dates that the Defendants made optimistic statements is circumstantial evidence that the Defendants knew that their optimistic statements were false. Given the

---

3. It should be noted, however, that Eichen's sales coincided with his retirement from the company.

above analysis, the Court finds that Plaintiffs have sufficiently alleged scienter so as to survive a 12(b)(6) motion.

### 3. Liability for those not directly responsible for the false and misleading statements

In *Central Bank v. First Interstate Bank*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), the Supreme Court held that " § 10(b) ... prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act.... The proscription does not include giving aid to a person who commits a manipulative or deceptive act." *Id.* at 177, 114 S.Ct. at 1448. The Supreme Court found that section 10(b) did not create liability for aiding and abetting the securities violations of others; such secondary participation is beyond the scope of the statute. Given this premise, only primary participants in a section 10(b) violation may be held liable. The only Defendants to which the allegedly false statements in the complaint are directly attributed to are Proxima, Eichen, Olson and Whittler. Except as otherwise discussed below, claims against the other individual Defendants (Johnson, Parker, Tamkin, Vogt, Zoeller, Minich, Seiber, Thomas, and Nash) for allegedly false and misleading statements are dismissed.

 In the Ninth Circuit, plaintiffs alleging securities fraud based on claims of allegedly false and misleading statements in "prospectuses, registration statements, annual reports, press releases, or other 'group-published information,'" may rely on a presumption that these statements are the collective work of those individuals with *direct involvement* in the day-to-day affairs of the company. *In re GlenFed, Inc.*, 60 F.3d 591 (9th Cir.1995); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987). To rely upon the "group-published information" presumption, "plaintiffs' complaint must contain allegations that ... [a particular defendant] either participated in the day-to-day corporate activities, or had a special relationship with the corporation, such as partic-

ipation in preparing or communicating group information at particular times." *GlenFed*, 60 F.3d at 593. This doctrine is limited to group published information, it does not hold individual defendants liable for analysts' reports or oral remarks made by others. *Strassman v. Fresh Choice*, 1995 WL 743728, 1995 U.S. Dist. LEXIS 19343 (N.D.Cal. Dec. 7, 1995). Therefore, as to the individual defendants who are not specifically alleged to have made false or misleading statements (Johnson, Parker, Tamkin, Vogt, Zoeller, Minich, Seiber, Thomas, and Nash), those claims that do not fall within the scope of "group-published information" are dismissed. These claims include those found in paragraphs 34, 35, 36, 37, 38, 39, 40, 42, 43, 44, 45, 47, 48, 50, 51, 53, 54, 56, 57, 58, 62, 63, 64, 67, 68, 71, 73, 74, 75, and 76.

As to the remaining claims that do fit within the "group-published information" doctrine (paragraphs 32, 33, 41, 49, 60, 66, 69, 70, 72, and 77), the allegations against each defendant must be analyzed to determine if Plaintiffs have met the applicable pleading requirement.[4] As to all Defendants, Plaintiffs allege that because of each particular defendant's position, he or she "knew the adverse non-public information about Proxima's business, finances, products, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him [or her] in connection therewith."

#### a. Outside Directors

 Johnson, Seiber and Nash are all outside directors of Proxima. In *GlenFed Inc.*, 60 F.3d 591, 593 (9th Cir.1995), the Ninth Circuit refused to extend the "group-published information" presumption to outside directors. The court held that, although the complaint identified the outside directors,

---

4. The remaining claims all involve statements in either press releases, annual reports or other

reports to shareholders.

listed their various committee assignments, and described their responsibilities, the complaint failed to allege that the outside directors "participated in the day-to-day corporate activities, or had a special relationship with the corporation, such as participation in preparing or communicating group information at particular times." *Id.; see also Strassman v. Fresh Choice*, 1995 WL 743728, 1995 U.S. Dist. LEXIS 19343 (N.D.Cal. Dec. 7, 1995) (noting that "by definition, outside directors do not participate in the corporation's day-to-day affairs" and finding that plaintiffs must allege more facts indicating operational involvement of the defendants, not facts that merely indicate their "boardroom titles"); *In re Silicon Graphics, Inc. Sec. Litig.*, 1996 WL 664639 at *8 (N.D.Cal. Sept.25, 1996) (boilerplate day-to-day involvement allegation not sufficiently particular to state a claim against an outside director); *In re Ross Systems Sec. Litig.*, [1994–1995 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,042, 1992 (N.D.Cal.1992) ("Without some allegation that an outside director participated in the publication of the allegedly false statements, or had any other "special relationship" with the corporation, claims that the director merely signed some of the group published documents are not sufficient to meet group pleading requirements.").

Similarly, in the instant case, the conclusory allegations against all of the outside directors are insufficient to subject them to liability under the "group-published information" doctrine. The allegations do not sufficiently describe the outside directors day-to-day involvement in the corporation, but rather attempt to include these directors by virtue of their titles and boilerplate "access to information" language. Therefore, the remaining claims (¶¶ 32, 33, 41, 49, 60, 66, 69, 70, 72, and 77) involving false and misleading statements against Defendants Johnson, Seiber and Nash are dismissed.

### b. Employees of Newpoint Corp.

■ Defendant Thomas is an employee of Newpoint Corp. and Defendant Parker is an officer of Newpoint Corp. As indicated earlier, Newpoint is the wholly owned subsidiary of Proxima. Again, Plaintiffs attempt to include Thomas and Parker within the "group-published information" doctrine by using the same boilerplate language discussed above. The reasons discussed above in relation to the outside directors apply with equal if not greater force to Defendants Thomas and Parker. These defendants are employees of a subsidiary and therefore, without more specific allegations of how these two defendants contribute to the day-to-day operations of Proxima, the remaining claims of false and misleading statements against them should be dismissed.

### c. Officers of Proxima

■ The remaining four defendants, Vogt, Tamkin, Zoeller and Minich, all serve as officers of Proxima. Vogt is the V.P. of International Sales, Tamkin, the V.P. of Manufacturing, Zoeller, the V.P. of Marketing, and Minich, the V.P. of Research and Development and Chief Technical Officer. Unlike the defendants discussed above, these individual defendants are embraced within the group-public information doctrine. Plaintiffs allege that because of their positions within the corporation, these defendants participated in drafting, reviewing and [5] approving the misleading statements. (Compl.¶ 89). The Court finds that given these defendants' positions within the corporation and the allegations against them, they fall within the scope of the group-published information doctrine and thus, the statements made in paragraphs 32, 33, 41, 49, 60, 66, 69, 70, 72, and 77 state a 10b–5 claim against Defendants Vogt, Tamkin, Zoeller and Minich.

### d. Summary of Claims

For the reasons discussed above, all of the 10b–5 claims based on false and misleading statements or omissions in the complaint are dismissed with leave to amend as to Defendants Johnson, Seiber, Nash, Parker, and Thomas. The claims in paragraphs 34, 35,

---

**5.** The complaint originally alleged the Defendants' involvement in the disjunctive, however, at the hearing, Plaintiffs' counsel made an oral motion to strike the "/or" language from the complaint, which the Court granted.

36, 37, 38, 39, 40, 42, 43, 44, 45, 47, 48, 50, 51, 53, 54, 56, 57, 58, 62, 63, 64, 67, 68, 71, 73, 74, 75, and 76 are dismissed as to Defendants Vogt, Tamkin, Zoeller, and Minich because the statements alleged to be false and misleading are not found in documents that are covered by the group-published information doctrine. However, the claims in paragraphs 32, 33, 41, 49, 60, 66, 69, 70, 72, and 77 remain valid claims against these four defendants. Except as otherwise discussed below, all claims alleged against Eichen, Olson, Whittler and Proxima state a cause of action and thus are not dismissed.

### 4. Liability for Statements of Third Parties

Many of the statements that are alleged to be false and misleading were made by third parties, primarily in analysts' reports. These statements are found in paragraphs 36, 37, 38, 44, 47, 51, 54, 57, 62, 63, 64, 67, 68, 71, 73, 74, 75, and 76 of the complaint.[6]

■■■ To be held liable for third party representations or forecasts, defendants must have "put their imprimatur, express or implied, on the projections." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922 (9th Cir.1996). Thus, a company may be liable for analysts' forecasts which it fostered and reviewed but failed to correct if it expressly or impliedly represented that the information was accurate or coincided with the company's views. *In re Syntex Corp. Sec. Litig.*, 855 F.Supp. 1086 (N.D.Cal.1994), *aff'd*, 95 F.3d 922 (9th Cir.1996). To plead adoption of third party statements with the sufficient degree of specificity required to satisfy Rule 9(b), a plaintiff must allege "that the insider provided misleading information to an analyst, that the analyst relied on this information in prepar-

ing a report, and *that the insider somehow endorsed or approved the report prior to or after its publication.*" *Stack v. Lobo*, 903 F.Supp. 1361, 1372 (N.D.Cal.1995). This requires the plaintiff to plead "entanglement" with sufficient particularity. *In re Syntex*, 95 F.3d at 934 (citing *In re Caere Corp. Sec. Litig.*, 837 F.Supp. 1054, 1059 (N.D.Cal.1993) (adoption occurs when a defendant "sufficiently entangled himself with the analysts' forecasts"; "[there are] sound reasons to construe the entanglement requirement strictly")).

■■■ Plaintiffs' complaint makes the conclusory allegation that "[i]ndividual Defendants Olson, Eichen, Parker, Vogt, Tamkin, Whittler, Zoeller, Minich, Seiber, Thomas and Nash were each aware of and approved the false statements issued by or on behalf of Proxima during the Class Period." (Compl.¶ 23). Additionally, in most of the paragraphs setting out the allegedly false and misleading statements made by and in analysts' reports, Plaintiffs generally indicate the date of the meeting or conference where information was relayed to the analysts, the content of the statements made, and the substance of the analysts' reports. These allegations, however, are insufficient to satisfy the requirement that Plaintiffs plead entanglement. Plaintiffs have merely alleged a "one-way flow of information" rather than acts of endorsements or approval. Such allegations are insufficient to establish liability for the third party statements.

The preceding analysis additionally applies to those statements published in newspapers and trade publications as Plaintiffs have failed to allege that the Defendants could have controlled the content of any of the statements made by these sources.[7] There-

---

**6.** The statements in paragraphs 34, 35, 40, 48, 53 and 58, although contained in documents not prepared by Proxima or its agents, contain direct quotes from Eichen or Olson. These statements are actionable as they are the statements of Proxima officers communicated to the public through a third party. These statements are distinguished from the third party statements discussed in the body of this order in that the quoted statements are not summaries of information by analysts or reporters that are relayed to the public; the statements are direct quotes of Proxima officers.

**7.** See *Strassman v. Fresh Choice*, 1995 WL 743728, 1995 U.S. Dist. LEXIS 19343 (N.D.Cal. Dec. 7, 1995). In *Strassman*, the court noted that:

'The securities laws require [defendants] to speak truthfully to investors; they do not require the company to police statements made by third parties for inaccuracies, even if the third party attributes the statement to the [defendant].' Thus, a plaintiff must plead with specificity who allegedly supplied the misleading information, how it was supplied, and how

fore, paragraphs 36, 37, 38, 44, 47, 51, 54, 57, 62, 63, 64, 67, 68, 71, 73, 74, 75, and 76 of the complaint are dismissed with leave to amend as to all Defendants.

Given the above analysis, the only potentially actionable 10b–5 claims remaining are those found in paragraphs 32, 33, 34, 35, 40, 41, 42, 43, 45, 48, 49, 50, 53, 56, 58, 60, 66, 69, 70, 72 and 77, and only against Defendants Proxima, Eichen, Olson and Whittler.

## C. Defenses

### 1. The Bespeaks Caution Defense

▬▬▬ As a defense to all of Plaintiffs' 10b–5 claims, Defendants claim that their statements are not actionable because they fully disclosed the very risks which Plaintiffs claim they omitted. Essentially, Defendants are attempting to invoke the bespeaks caution doctrine to shield them from liability. The bespeaks caution doctrine " 'provides a mechanism by which a court can rule as a matter of law ... that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against securities fraud.' " *Fecht v. Price Co.,* 70 F.3d 1078, 1081 (9th Cir.1995) (quoting *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1413 (9th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 185, 133 L.Ed.2d 123 (1995)). The Ninth Circuit, however, has also recognized that "the 'bespeaks caution' doctrine reflects nothing more than the 'unremarkable proposition that statements must be analyzed in context.' " *Id.* at 1082. In explaining how the bespeaks caution doctrine is applied to a motion to dismiss, the *Fecht* court noted:

> The 'bespeaks caution' doctrine ... is wholly consistent with our analysis that whether a statement in a public document is misleading may be determined as a matter of law only when reasonable minds could not disagree as to whether the *mix* of information in the document is mislead-

ing. Inclusion of *some* cautionary language is not enough to support a determination as a matter of law that defendants' statements were not misleading.... A motion to dismiss for failure to state a claim will succeed only when the documents containing the defendants' challenged statements include '*enough* cautionary language or risk disclosure,' that 'reasonable minds' could not disagree that the challenged statements were not misleading.

*Id.*

Defendants assert that as to the three categories of alleged non-disclosures, Proxima's SEC filings fully disclosed the risks,[8] and therefore Plaintiffs' claims fail as a matter of law. The Defendants quote the language from the SEC filings that they contend satisfies the bespeaks caution doctrine. Although cautionary language was used in the applicable filings, the mix of information contained in the public documents issued by the company do not clearly preclude reasonable minds from differing on the question of whether the optimistic statements were misleading.

For example, Proxima's 10–K for the fiscal year ending April 3, 1994, includes the following language:

> The Company believes that timely development and introduction of new products are essential to maintaining its competitive position. There can be no assurance that the Company will be able to develop and deliver new products in a timely manner, or that new products, once delivered will achieve market acceptance.

Brownlie Decl. Ex. B.

▬▬ This language, although cautionary, does not directly address the delays that Plaintiffs claim Proxima was then experiencing with its laser-projector development. Further, this language was not included in

---

the company could have controlled the content of the statement. *Id.* (quoting *Raab v. General Physics Corp.,* 4 F.3d 286, 288 (4th Cir.1993)). For the reasons discussed in the text, Plaintiffs fail to meet this burden.

**8.** The three categories of risks alleged by Plaintiffs and categorized by the defendants include:

(1) the possibility that the long range microlaser project might not be successful; (2) the possibility that advances in technology might adversely effect Proxima's results; and (3) the possibility that a component part shortage might adversely affect Proxima's results.

the actual releases and statements issued that Plaintiffs claim are misleading. *See In re Silicon Graphics, Inc. Sec. Litig.*, 1996 WL 664639, at * 14. It cannot be said that this cautionary language is sufficient to establish that no reasonable minds could differ as to whether the challenged statements, in light of the cautionary language, was not misleading. The other disclosures quoted by Defendants similarly caution against the potential risks of investing in Proxima stock, but the statements do not meet the requirements necessary to invoke the bespeaks caution doctrine at the motion to dismiss stage.

## 2. Statute of Limitations

■■■ Defendants also assert that Plaintiffs' claims must be dismissed because they are time-barred. Section 10(b) and Rule 10b–5 complaints must be filed "within one year after the discovery of facts constituting the violation and within three years after such violation." 15 U.S.C. §§ 78i(e), 78r(c); *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 & n. 9, 111 S.Ct. 2773, 2782 & n. 9, 115 L.Ed.2d 321 (1991). Plaintiffs filed their action on August 16, 1996, one day shy of the anniversary of Proxima's so-called "shock the market" announcement on August 17, 1995. This was the date that Proxima announced the "problems" it was experiencing in the production of its new products. The stock plummeted immediately after this announcement.

Defendants contend that the one year statute of limitations runs from the date when a plaintiff *should* have discovered the alleged fraud; or in other words, one year from the day a plaintiff is put on "constructive or inquiry notice" of the fraud. Defendants claim that this date falls on May 1 or 2, 1995, the dates Proxima announced that "after seven consecutive quarters of record revenues and earnings, it may experience a slow first quarter for Fiscal 1996 due to competitive new products and the production ramp up for the recently announced DP5100." (Defs.' Mot., 33:19–21; Compl. ¶ 60). Proxima's stock fell $6 1/8 on May 2, 1995, immediately

after this announcement. At the latest, Defendants contend that the statute began to run on June 13, 1995, the date Proxima issued a press release stating that it expected lower first quarter earnings. (Compl.¶ 51).

Defendants' contentions are without merit. An initial drop in the price of a company's stock does not serve to put Plaintiffs on notice of fraud. In fact, Plaintiffs should not be charged with knowledge of the fraud (whether actual or inquiry) until at the earliest August 17, 1995, the day Proxima issued its damaging statements, and the date the stock fell over $7, a 27.5% collapse. Plaintiffs' complaint was filed within the one-year time period and therefore is not barred by the statute of limitations.

## D. Section 20(a) Claim against Olson and Proxima

Section 20(a) of the 1934 Act imposes joint and several liability on any "person who, directly or indirectly, controls any person liable" for securities fraud under the Act, "unless the controlling person acted in good faith and did not directly or indirectly induce" the violations. The SEC defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405 (1995).

■■■ Plaintiffs need not show day-to-day control of the defendant company in order to establish control person liability. Plaintiffs must, however, demonstrate "actual power or influence over" the company. *Gray v. First Winthrop Corp.*, 776 F.Supp. 504, 510 (N.D.Cal.1991). Following these principles, Plaintiffs must assert that the individual defendants had the power to control or influence Proxima in order to state a cognizable claim under Section 20(a).

Plaintiffs allege control person liability against Olson and Proxima. The allegations in paragraph 94 [9] of the complaint are suffi-

---

**9.** Plaintiffs allege that "Defendant Olson acted as a controlling person of Proxima within the meaning of § 20(a) of the Exchange Act. By reason of his position as a director and officer of Proxima and/or because of his substantial stock ownership, he had the power and authority to cause Proxima to engage in the wrongful conduct complained of herein. Proxima controlled each of

cient to satisfy the pleading standard for a § 20(a) violation. Therefore, to the extent that Plaintiffs state a claim for violation of section 10(b) and Rule 10b–5 by any other defendant discussed above, their § 20(a) claim withstands the Defendants' motion to dismiss.

### III. CONCLUSION

Based on the above analysis, the only 10b–5 claims remaining are those against Olson, Eichen, Whittler and Proxima found in paragraphs 32, 33, 34, 35, 40, 41, 42, 43, 45, 48, 49, 50, 53, 56, 58, 60, 66, 69, 70, 72 and 77, and the claims against Defendants Vogt, Tamkin, Zoeller, and Minich found in paragraphs 32, 33, 41, 49, 60, 66, 69, 70, 72, and 77. Additionally, the section 20(a) claim against Olson and Proxima survives the motion to dismiss. As discussed above, the claims against Defendants Johnson, Seiber, Nash, Parker and Thomas are dismissed with leave to amend.

Based on this summary, the Court hereby GRANTS in part and DENIES in part Defendants Proxima, Olson, Eichen and Whittler's motion to dismiss; GRANTS Defendants Johnson, Seiber, Nash, Parker and Thomas' motion to dismiss, and GRANTS in part and DENIES in part, Tamkin, Zoeller, Vogt and Minich's motion to dismiss.

Plaintiffs are given sixty (60) days leave to amend.

IT IS SO ORDERED.

**ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION AND AFFIRMING COURT'S PRIOR ORDER; GRANTING MOTION TO STRIKE; AND DENYING MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL**

On March 26, 1997, Defendants filed the following motions:

(1) a motion for reconsideration of the Court's order granting in part and denying in part Defendants' motion to dismiss;

(2) a motion for certification for interlocutory appeal;

the Individual Defendants and all of its employ-

(3) a motion to strike portions of the complaint.

Upon due consideration of the moving and responding papers, the Court hereby GRANTS Defendants' motion for reconsideration, but affirms its order granting in part and denying in part Defendants' motion to dismiss. In addition, the Court hereby GRANTS Defendants' motion to strike those portions of the complaint that refer to the previous litigation and settlement involving Proxima, and DENIES Defendants' motion for certification for interlocutory appeal.

### A. Motion for Reconsideration

On March 13, 1997, this Court issued an order granting in part and denying in part Defendants' motion to dismiss pursuant to Rule 12(b)(6). In that Order, the Court thoroughly explained the reasoning in support of its ruling. In its motion for reconsideration, Defendants challenge the Court's ruling on the basis that the Court did not require the Plaintiffs to plead "evidentiary facts" as is required by the Private Securities Litigation Reform Act (Reform Act) and the controlling case law. Essentially, Defendants are attempting to get a second bite at the apple by presenting the Court with the same arguments that Defendants previously presented in their briefs and during oral argument. Although Defendants claim that the Court did not hold Plaintiffs to the correct pleading standard, the Court disagrees. The Court's order specifically addressed the cases which set out the pleading standard and held that Plaintiffs had satisfied their burden. *See* Order at pp. 6–10. *See Fecht v. Price Co.,* 70 F.3d 1078, 1082 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1422, 134 L.Ed.2d 547 (1996); *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994) (en banc); *Warshaw v. Xoma Corp.,* 74 F.3d 955, 960 (9th Cir.1996). Upon reconsideration of Defendants arguments and a further review of Plaintiffs' complaint, the Court is completely comfortable with the rulings it made in its March order. Accordingly, the Court affirms its March order in its entirety.

ees." (Compl.¶ 94.).

### B. Motion to Strike

Defendants additionally move to strike from Plaintiffs' complaint all references to the previous litigation against Proxima and the settlement of that litigation. Good cause appearing, the Court GRANTS Defendants' motion and hereby orders that such references be stricken from Plaintiffs' complaint.

### C. Motion for Certification for Interlocutory Appeal

Alternatively, Defendants request that the Court certify its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Certification of an interlocutory order for appeal is appropriate only where the movant establishes that (1) the order presents a controlling question of law; (2) there are substantial grounds for difference of opinion on that controlling question of law; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Defendants claim that this Court did not apply the correct standard of law in determining whether Plaintiffs' complaint was sufficient to withstand a motion to dismiss. As stated above, Defendants contend that the Court failed to require Plaintiffs to plead "evidentiary facts" in their complaint as the controlling case law and Reform Act requires. *See Fecht v. Price Co.,* 70 F.3d 1078, 1082 (9th Cir.1995), *cert. denied,* ─── U.S. ───, 116 S.Ct. 1422, 134 L.Ed.2d 547 (1996); *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994) (en banc); *Warshaw v. Xoma Corp.,* 74 F.3d 955, 960 (9th Cir.1996).

Defendants' argument is without merit. The cases that Defendants contend that this Court ignored are precisely the cases the Court relied upon in making its ruling. Applying the law from these cases, the Court held that Plaintiffs had sufficiently pled their case so as to withstand a motion to dismiss. Defendants do not present the Court with a controlling issue of law as to which there is substantial ground for difference of opinion, rather Defendants challenge the manner in which the Court applied the facts in the instant case to the law. Therefore, the Court finds that its March order is not appropriate for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Defendants' motion for certification is DENIED.

IT IS SO ORDERED.