**In re SMARTALK TELESERVICES, INC. SECURITIES LITIGATION,**

**This Document Relates To: All Actions Particularly USDC S.D. Ohio Case No. C2–98–814**

**No. 00–1315.**

United States District Court, S.D. Ohio, Eastern Division.

Nov. 1, 2000.

528

Greg May, Munsch Hardt Kopf Harr & Dinan, Dallas, TX, Evans L. Land, Ann E. Bennington, Sidney Williams, Hahn Loeser & Parks, Columbus, OH, Darryl Paul Rains, San Francisco, CA, for Smartalk Teleservices, Inc.

Richard Stuart Wayne, Strauss & Troy, Cincinnati, OH, Maribeth Deavers, Martin Pergram & Browning, Worthington, OH, for Richard A. Eckstein.

Marilyn Ruth Donoff, M R Domoff and Associates, Dayton, OH, Maribeth Deavers, Lionel Z. Glancy, Lionel Z. Glancy Law Offices, Los Angeles, CA, for Allison Mizraji.

Maribeth Deavers, Martin Pergram & Browning, Worthington, OH, William S. Lerach, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, Kevin P. Roddy, Milberg Weiss Bershad Hynes & Lerach, Los Angeles, CA, Stephen Richard Basser, Barrack Rodos & Bacine, San Diegao, CA, for Sidney Weinstein.

Maribeth Deavers, Martin Pergram & Browning, Worthington, OH, Kurt B. Olsen, Kurt Olsen Law Offices, Washington, DC, for Charles R. Ostroff.

Maribeth Deavers, Martin Pergram & Browning, Worthington, OH, Richard S. Schiffrin, Schiffrin Craig & Barroway, Bala Cynwyd, PA, for Gerald Tobin.

Maribeth Deavers, Martin Pergram & Browning, Worthington, OH, Jeffrey H. Squire, Kaufman Malchman Kirby & Squire, New York City, for Patricia Bartolomeo.

Maribeth Deavers, Martin Pergram & Browning, Worthington, OH, Stanley Grossman, Pomerantz Haudek Block & Crossman, New York City, for David Jaroslawicz.

Maribeth Deavers, Martin Pergram & Browning, Worthington, OH, Robert N. Kaplan, Kaplan Kilsheimer & Fox, New York City, for David Turf.

Maribeth Deavers, Martin Pergram & Browning, Worthington, OH, Joel Sanford Taylor, Anthony J. Celebrezze, Jr., Dinsmore & Shohl, Columbus, OH, Kenneth A. Sweder, Sweder & Ross, Boston, MA, for Victor Grillo, Jr., Lloyd Lapidus, DTR Associates, Inc.

Maribeth Deavers, Martin Pergram & Browning, Worthington, OH, Daniel R. Karon, Robert N. Kaplan, Kaplan Kilsheimer & Fox, New York City, for Lisa Ernst.

Boris Feldman, Bredhoff & Kaiser, Washington, DC, Keith Eggleton, Wilson Sonsini Goodrich & Roseati, Palo Alto, CA,

Sidney Williams, Hahn Loeser & Parks, Columbus, OH, for Robert H. Lorsch.

Boris Feldman, Bredhoff & Kaiser, Washington, DC, Sidney Williams, Hahn .Loeser & Parks, Columbus, OH, for Erich L. Spangenberg, Glen Andrew Folck, Richard Teich, David A. Hamberger.

Sidney Williams, Hahn Loeser & Parks, Columbus, OH, for Robert M. Smith, Fred F. Fielding, Ahmed O. Alfi, Wayne V. Wooddell.

Thomas Leslie Long, Baker & Hostetler, Columbus, OH, for Amre Younesss, Lisa Marino.

John Joseph Kulewicz, Vorys Sater Seymour & Pease, Columbus, OH, for Pricewaterhousecoopers LLP.

Joel Sanford Taylor, Dinsmore & Shohl, Columbus, OH, Kenneth A. Sweder, Sweder & Ross, Boston, MA, for Smartalk Partners.

### OPINION AND ORDER # 2

SARGUS, District Judge.

This matter is before the Court on the Individual Defendants' Motion to Dismiss the Consolidated and Amended Class Action Complaint and on Defendants SmarTalk Partners, LLC Amre Youness and Lisa Marino's Motion to Dismiss the same Complaint ("Class Complaint"). For the Reasons that follow, the Court DENIES the Motions.

## I. Background.

Plaintiffs acquired stock in SmarTalk Teleservices Inc. ("SmarTalk") between August 13, 1997 and January 7, 1999 inclusive ("the relevant time period"). SmarTalk later filed for bankruptcy. Plaintiffs filed suit alleging, *inter alia*, that SmarTalk officers and directors presented a false picture of SmarTalk through various public statements. According to the Plaintiffs, the Defendants falsely stated SmarTalk's revenues and profits in SEC filings, in press releases, and in conference calls with analysts and investors. The Defendants allegedly did this in order to inflate the value of SmarTalk stock so that SmarTalk could use its stock as consideration to acquire other companies and so that the individuals associated with the company could sell their personal holdings in SmarTalk stock at an inflated price. The Plaintiffs focus their claims on the fact that in August of 1998, SmarTalk announced that it its accountants had advised the company that there were some potentially significant accounting errors in the treatment of a number of acquisitions SmarTalk made in 1997. As a result of these and other errors, SmarTalk was forced to restate the company's 1997 financial statements, as well as quarterly statements for the first three quarters of 1998. These restatements caused the value of SmarTalk stock to drop significantly and SmarTalk eventually filed for bankruptcy. Plaintiffs raise claims under the Securities and Exchange Act of 1934 (the "Act") as modified by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

### A. SmarTalk.

SmarTalk was formed in 1994 to sell prepaid phone cards to the public through retailers and distributors. (Class Complaint ¶¶ 13, 35). SmarTalk grew rapidly, mostly through acquisitions, and became one of the largest providers of prepaid telecommunications products and services in North America. (*Id.* at ¶¶ 13, 36, 37).

Trouble hit on August 10, 1998 and on October 23, 1998 when SmarTalk announced that its financial statements for the third quarter 1997, through the second quarter 1998 contained material overstatements of revenue. Also, on January 7, 1999, SmarTalk announced that its third quarter 1998 financial statements were overstated.

The Company's revenues for 1997, reported as $32 million, were overstated by $8.3 million or 35%. In addition, net income from continuing operations over the same period, reported as $2.7 million, actually was a loss of over $7 million.

The same was true of the results reported for the first quarters of 1998. Cumulative revenues for those quarters, initially reported as over $151 million, was overstated by $15.7 million or 12%; cumulative losses from continuing operations, initially reported as almost $23 million, were understated by over $45 million, or by 197%; and net losses for the same nine month period, initially reported as $23.7 million were understated by over $49 million or 207%.

According to the Class Complaint, these misstatements were the result of numerous fraudulently committed accounting errors. Specifically, Plaintiffs allege that SmarTalk fraudulently inflated SmarTalk's reported revenues and/or earnings by:

- improperly categorizing as ordinary "goodwill" at least $88.9 million of intangible assets purchased during four of SmarTalk's 1997 acquisitions so that the associated purchase price could be amortized over 15–20 years rather than 2–10 years, thereby reducing the amortization expenses and increasing earnings (Class Complaint at ¶¶ 47–52);

- taking "big bath" one-time charges totaling $64.2 million in connection with SmarTalk's December 1997 acquisition of ConQuest Telecommunications Services Corp. ("ConQuest")—equal to the entire purchase price—allowing defendants to inflate later period earnings by improperly transferring expenses incurred in these later periods back into the charge previously recorded as capital expenses rather than operating expenses, (*Id.* at ¶¶ 53–57);

- accounting for acquisitions in 1997 involving the issuance of SmarTalk shares by improperly using the share price on the day of the announcement rather than the three day average of the share prices spanning the announcement of the transaction resulting in a lower acquisition cost to SmarTalk—thereby reducing amortized goodwill expenses by $7 million, (*Id.* at ¶¶ 58–60);

- improperly reporting as capital expenses at least $10.9 million in marketing expenses paid to manufacturers and retailers to carry SmarTalk's product thereby spreading the expense associated with these items over a number of years rather than properly incurring these expenses in fiscal year 1997 and the first and second quarters of 1998, (*Id.* at ¶¶ 61–64);

- improperly recognizing the deferred revenues and breakage revenues of the companies SmarTalk acquired in 1997, (*Id.* at ¶¶ 65–70);

- failing to write off impaired or uncollectible accounts receivable, (*Id.* at ¶¶ 71–74);

- creating a sham sale of SmarTalk's money-losing call center operations at a price of $20 million to a related party that had no prior material operations or assets and thus lacking in any ability to pay, (*Id.* at ¶¶ 75–79).

According to the Class Complaint, SmarTalk's dissemination of false financial statements in 1997 and 1998 artificially inflated the market price of SmarTalk's stock. Stock prices increased from $18–7/8 per share at the beginning of the relevant time frame to as high as $36–1/2 per share. On February 26, 1998 for instance, after SmarTalk's fallacious announcement of "record revenues and earnings" for the quarter and year ending December 31, 1997, SmarTalk's stock surged 23% from $27–7/16 to $33–5/8 in a single day on extraordinarily high volume of 3.64 million shares—more than 7 times the three month daily average.

During the relevant time frame, the Defendants personally sold over 2.7 million shares of SmarTalk stock for over $63 million. For instance, on November 12, 1997, SmarTalk announced record results for the third quarter of 1997. On November 20, 1997, Defendant Lorsch sold 1.3 million shares of SmarTalk stock for $29.9

million. Similarly, on February 26, 1998, SmarTalk announced its fourth quarter 1997 results. Between March 2 and March 12, 1998, certain of the Defendants sold 261,480 shares for over $8 million.

In addition, during the relevant time frame, SmarTalk acquired at least two companies and raised $180 million in capital though a convertible notes offering and an equity offering. Those misstatements and corresponding sales of stock make up the heart of the Plaintiffs' claims against the Defendants.

### B. The Defendants.

The Defendants are divisible into three groups. The first group consists of SmarTalk's directors and officers who are alleged to have made the materially false statements in question (the "Speaking Defendants"). The second group of Defendants consists of SmarTalk's directors and officers who did not make any of the allegedly false statements in question (the "Non–Speaking Defendants"). Throughout the Complaint, the Plaintiffs have referred to the individuals who comprise the first two groups of Defendants as the "Individual Defendants." (Class Complaint at ¶ 22). The third group consists of investors in SmarTalk. (the "Investor Defendants").

### 1. The Speaking Defendants and the Statements.

The Speaking Defendants are Robert H. Lorsch, Erich L. Spangenberg, Glen Andrew Folck and Wayne V. Wooddell. Lorsch was the Chairman of the Board and until February 1998 the Chief Executive Officer of SmarTalk. (Class Complaint at ¶ 21(a)). According to the Class Complaint, Lorsch signed SmarTalk's Form 10–K report for the fiscal year ending December 31, 1997. He also prepared and/or reviewed allegedly false press releases and SEC filings and participated in multiple conference calls with investors and analysts who prepared reports based on those calls. (*Id.* at ¶¶ 85, 88, 89, 90, 96, 97, 99, 100, 101, 107, 108, 110, 112, 113,)

During the time frame in question, Lorsch also sold 1.95 million shares of SmarTalk stock for $42.2 million. (*Id.* at ¶¶ 94, 104).

Spangenberg was the President of SmarTalk from April 1997 through November 1997, and the Chief Operating Officer from April 1997 until February 1998 when he was named Chief Executive Officer and Vice Chairman of the Board of Directors. Spangenberg served on SmarTalk's Board of Directors from as early as August 1997. Spangenberg signed the company's Form 10–K for 1997, prepared and/or reviewed press releases and SEC filing and participated in conference calls with analysts who prepared reports based on those calls. (*Id.* at ¶¶ 21(b), 85, 89, 90, 96, 100–01, 112, 117, 119, 125–27,130, 131). Spangenberg sold no stock during the relevant time frame.

Folck served as SmarTalk's Chief Financial Officer from August 1997 until September 1998. According to the Class Complaint, prior to becoming SmarTalk's CFO, Folck had never been a CFO or held a senior financial position with a company. Folck signed the company's Form 10–K for 1997, and the company's 10–Q reports for the second quarter of 1997 through the second quarter of 1998. Folck prepared and/or reviewed press releases and SEC filings, and Folck participated in conference calls with analysts who based their reports on those calls. (*Id.* at ¶¶ 21(c), 91–2, 100–02, 110, 112, 113, 117, 119 121). Folck sold 25,000 shares for $582,875 during the relevant time frame.

Wooddell became SmarTalk's Vice President and Chief Financial Officer in September 1998. Wooddell signed SmarTalk's Form 10–Q for the third quarter of 1998. In addition, from September 1998 through January 1999 Wooddell was responsible for preparing and/or reviewing press releases and SEC filings and participated in the conference calls with analysts who based their reports on the calls. (*Id.* at ¶¶ 21(c), 130, 133). Wooddell sold no

shares of SmarTalk stock during the relevant time frame.

## 2. The Nonspeaking Defendants.

The Plaintiffs admit that Defendants David A. Hamburger, Richard M. Teich, Robert M. Smith, Fred F. Fielding, and Ahmed O. Alfi made no false statements during the relevant time period. Hamburger was Vice–President–Legal Affairs and General Counsel. Hamburger had never been general counsel of another company and had never held an in-house position prior to his employment with the Company. Hamburger prepared and/or reviewed the false press releases and SEC filings. The Plaintiffs generally allege that Hamburger participated in conference calls with analysts but the Class Complaint does not identify any specific conference call in which Hamburger participated. During the relevant time frame, Hamburger sold 160,000 shares of SmarTalk for over $4.7 million. (*Id.* at ¶¶ 21(d), 116).

Teich was the Executive Vice President of SmarTalk. Teich prepared and/or reviewed allegedly false press releases and SEC filings. The Plaintiffs generally allege that Teich participated in conference calls but the Class Complaint does not identify any specific conference call in which Teich participated. During the relevant time frame, Teich sold 120,000 shares of SmarTalk stock for over $3.2 million. (*Id.* at ¶¶ 21(e), 94, 116).

Smith was a director of SmarTalk. Smith signed the Company's Form 10–K for the 1997 fiscal year, and prepared and/or reviewed press releases and SEC filings. The Plaintiffs generally allege that Smith participated in conference calls with analysts but the Class Complaint does not identify any specific call in which Smith participated. During the relevant time frame, Smith sold 28,240 shares of SmarTalk stock for over $880,000. (*Id.* at ¶¶ 21(h), 93, 97).

Fielding was a director of SmarTalk. Fielding signed the Company's Form 10–K for fiscal year 1997. Fielding also prepared and reviewed press releases and SEC filings. The Plaintiffs allege that Fielding participated in conference calls with analysts but the Class Complaint does not identify any specific call in which Fielding participated. Fielding was also one of two members of SmarTalk's Audit Committee. The Audit Committee was responsible for (1) reviewing SmarTalk's accounting practices and consulting with SmarTalk's independent auditors concerning financial statements, accounting and financial policies and internal controls; (2) reviewing the scope of the independent auditors' activities and practices; and, (3) maintaining good communications among the Audit Committee, the independent auditors, and the Company's management on accounting matters. The Audit Committee did not meet in 1996 and held only one meeting in 1997. During the relevant time frame, Fielding sold 28,240 shares of SmarTalk stock for over $887,000. (*Id.* at ¶ 21(g), 116).

Alfi was a director of SmarTalk. Alfi signed the Company's Form 10–K for 1997, and prepared and/or reviewed press releases and SEC filings. The Plaintiffs also allege that Alfi participated in conference calls with analysts but the Class Complaint does not identify any specific calls in which Alfi participated. Alfi was the other member of SmarTalk's Audit Committee. Alfi was also a "partner" and a "controlling person" of Defendant SmarTalk Partners, LLC which sold 429,999 shares of SmarTalk stock for over $10.4 million. (*Id.* at ¶¶ 21(h), 94).

## 3. The Investor Defendants.

SmarTalk Partners, LLC owned as much as 1.6 million shares of SmarTalk stock. SmarTalk Partners LLC sold 429,-999 shares of that stock for $10,443,229. Defendant Alfi is alleged to have been a partner in SmarTalk Partners LLC which allegedly operated as Alfi's "alter ego." Plaintiffs contend that SmarTalk Partners LLC sold its shares of SmarTalk based on the Alfi's knowledge that the press releases, SEC filings, and conference calls with

analysts all contained false statements. (*Id.* at ¶ 21(j)).

According to the Class Complaint, Amre Youness is the "owner and manager" of SmarTalk Partners LLC. According to the Class Complaint, he is alleged to be Alfi's "partner" in SmarTalk Partners LLC. (*Id.* at ¶ 21(k)). As a result of his close relationship with Alfi, Youness was in a relationship of trust and confidence with SmarTalk, and had access to and knowledge of the facts that made SmarTalk's SEC filings, press releases and statements to analysts false. (*Id.* at ¶¶ 21(k), 94).

Lisa Marino is the sister-in-law of Youness and partner with Youness in other business ventures. According to the Class Complaint, Youness gave Marino at least $573,709 of SmarTalk's proceeds from the sale of its stock. Plaintiffs name Marino as a nominal/relief defendant in that she received a portion of the other defendants' ill-gotten gains to which she allegedly had no legitimate entitlement or claim. (*Id.* at ¶ 21(*l*)).

The Investor Defendants, who are separately represented from the Speaking and Non–Speaking Defendants, have filed their own Motion to Dismiss.

## C. The Class Plaintiffs and Their Claims.

The Class Plaintiffs consist of all persons, other than the Defendants and their affiliates, who purchased or otherwise acquired SmarTalk securities between August 13, 1997 and January 7, 1999 (the "Class Period") excluding those persons who acquired SmarTalk notes during a September 1997 offering and those persons who purchased or otherwise acquired notes in connection with SmarTalk's acquisitions during the Class period. (Class Complaint ¶ 1). The Class Plaintiffs allege that they relied on the Defendants' misrepresentations contained in press releases, (*Id.* at ¶¶ 88, 99, 110, 117–118, 132), in telephone conference calls held with analysts and investors (*Id.* at ¶¶ 82–87, 89, 96, 100, 107, 111, 119, 126, 130, 133), and in its

SEC filings from the second quarter of 1997 to the third quarter of 1998 including the Form 10–K report for all of 1997. (*Id.* at ¶¶ 91, 102, 113, 121, 129, 134).

The Class Plaintiffs have raised four claims for relief. First, the Plaintiffs assert that all of the Individual Defendants, except Lisa Marino, violated section 10(b) of the Act and Rule 10b–5 by committing securities fraud. (*Id.* at ¶¶ 150). Second, the Plaintiffs assert that all of the Individual Defendants violated section 20(a) of the Act because they acted as controlling persons of SmarTalk when SmarTalk committed the alleged securities fraud. (*Id.* at ¶ 150). In the same claim for relief, the Plaintiffs assert that Alfi and Youness violated section 20(a) of the Act because they acted as controlling persons of SmarTalk Partners LLC when SmarTalk Partners LLC violated the Act. Third, the Plaintiffs assert that Defendants Smith, Alfi, SmarTalk Partners LLC and Youness violated section 20(a) of the Act because these Defendants, by virtue of their respective relationships to SmarTalk, had access to material non-public information about SmarTalk at the time they sold or caused to be sold SmarTalk stock in violation of section 10(b) and 10b–5. (*Id.* at ¶¶ 159–64). Last, Plaintiffs bring a claim for injunctive or other equitable relief including the disgorgement of ill-gotten gains against Lisa Marino for the money she allegedly received from the sale of SmarTalk Partner LLC's holdings of SmarTalk stock. (*Id.* at ¶¶ 165–66).

## II. General Standards Regarding Motion To Dismiss.

### A. Standard For Granting Rule 12(B)(6) Motion.

A motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2

L.Ed.2d 80 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir.1993). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

**B. Standard for Pleading Securities Fraud.**

Allegations of securities fraud must, as must allegations of fraud generally, satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See* Fed. R.Civ.P. 9(b). Rule 9(b) states as follows:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). Thus, Rule 9(b) requires that fraud be pleaded with particularity except for the "condition of mind." "To satisfy FRCP 9(b), a plaintiff must at a minimum allege the time, place and contents of the misrepresentations(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.1984). Although Rule 9(b) permits the pleading of a condition of mind generally, allegations of fraudulent misrepresentation must be made with a sufficient factual basis to support an inference that they were knowingly, or recklessly made. *See Coffey v. Foamex L.P.*, 2 F.3d 157, 161 (6th Cir.1993);

*Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir.1999).

With respect to statutory securities fraud claims, the PSLRA supplements the pleading standard set forth in Rule 9(b). The Sixth Circuit Court of Appeals has summarized the effect of PLSRA as follows:

Despite the application of the Rule 9(b) heightened pleading requirement to securities fraud cases, the Supreme Court recognized long ago that "litigation under Rule 10b–5 presents a danger of vexatiousness different in degree and kind from that which accompanies litigation in general." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 739–44, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). As the Court then observed, groundless claims of securities fraud tended to delay the normal business activities of a corporate defendant while the plaintiff conducted extensive discovery of business documents in the hopes of finding relevant evidence. *See id.* at 741, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539.

In 1995, Congress concluded that Rule 9(b) had "not prevented abuse of the securities laws by private litigants." H.R. Conf. Rep. No. 104–369 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 818. Indeed, Congress echoed the concerns expressed by the Supreme Court in *Blue Chip*, noting that frivolous securities fraud litigation "unnecessarily increase[s] the cost of raising capital and chill[s] corporate disclosure, [and is] often based on nothing more than a company's announcement of bad news, not evidence of fraud." S.Rep. No. 104–98 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690. On December 22, 1995, over the objection of the President, Congress amended the Securities Act through passage of the PSLRA. See Private Securities Litigation Reform Act of 1995, Pub.L. No. 104–67 (1995).

The PSLRA amendments to the Securities Act require the following:

In any private action arising under this chapter in which the plaintiff may recover money damages on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(2) (1998). The PSLRA provides that if a plaintiff does not meet this requirement, a court may, on any defendant's motion, dismiss the complaint. *See* 15 U.S.C. § 78u–4(b)(3) (1998). As courts have observed, the PSLRA did not change the scienter that a plaintiff must prove to prevail in a securities fraud case but instead changed what a plaintiff must plead in his complaint in order to survive a motion to dismiss. *See, e.g., In re Glenayre Techs. Inc. Sec. Litig.*, 982 F.Supp. 294, 298 (S.D.N.Y.1997). Indeed, the PSLRA "nowhere defines what the 'required state of mind' is for any of the kinds of actions that might be brought" under the Securities Act. *In re Baesa Securities Litig.*, 969 F.Supp. 238, 240 (S.D.N.Y.1997).

*In re Comshare Incorporated Securities Litigation*, 183 F.3d 542, 548–49 (6th Cir. 1999). Thus, the PSLRA is an attempt to limit the cost of securities fraud cases on the securities industry by requiring that plaintiffs in such actions either plead facts sufficient to give rise to a "strong inference" of the necessary scienter or else have their claims dismissed on the pleadings.

## III. Analysis of the Individual Defendants' Motion to Dismiss.

The Individual Defendants move to dismiss all of the Plaintiffs' 10b claims for failure to state a claim upon which relief can be granted.[1] "To state a claim under § 10(b) of the Securities and Exchange Act of 1934 ('Securities Act') and Rule 10b–5, a plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with knowledge or scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury." *In re Comshare*, 183 F.3d at 548. (citing *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1409 (6th Cir. 1991)). The Defendants move to dismiss the Class Complaint claiming that 1) the Complaint fails the heightened pleading requirement of the PSLRA, 2) the Plaintiffs have failed to adequately plead scienter, and 3) neither the Speaking Defendants nor the Nonspeaking Defendants can be liable for various reasons.

## A. The Information and Belief Pleading Requirement.

■ The Individual Defendants argue that the Class Complaint should be dis-

1. Section 10(b) provides as follows:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 15 U.S.C. § 78j.
 Rule 10b–5 provides as follows:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or

instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
 17 CFR § 240.10b–5.

missed because it fails to meet the pleading requirement imposed by the PSLRA. The PSLRA states that: "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b). The Plaintiffs contend that they made the allegations in the Class Complaint "based upon the investigations of their counsel, which included a review of SmarTalk's SEC filings, securities analysts' reports and advisories about the Company, press releases issued by the Company, media reports about the Company, private investigations and discussion with consultants." (Class Complaint at ¶ 174).

The Defendants argue that because the Class Complaint is based on the investigation of counsel it is pleaded on information and belief and it does not include the particularity required by the PSLRA. The Plaintiffs counter that a complaint based on investigation of counsel is not pleaded on information and belief and that even if it were, the Class Complaint in this case satisfies the particularity requirements of the PSLRA because it is based on the restatement of SmarTalk's financial statements.

Even if the Class Complaint is pleaded on information or belief, the Court concludes that at least portions of the Complaint are pleaded with the particularity required by the PSLRA. Specifically, the Complaint identifies the exact statements or their content that the Plaintiffs contend were fraudulent, the identity of the speaker(s), the date the statements were made, the conversations in which the statements were made, the reasons the statements were false, and circumstances giving rise to a strong inference of scienter. The Defendants focus on the Plaintiffs purported failure to "cite a single document, source or fact which would corroborate their claims that the Individual Defendants were aware of the allegedly false statements when they were issued." This contention overlooks the circumstantial evidence theory forwarded by the Plaintiffs and the fact that the Plaintiffs need not show that Defendants "were aware" that statements were false when made, as discussed below, recklessness is sufficient. *See In re Comshare*, 183 F.3d 542, 549 (6th Cir.1999). In addition, the Plaintiffs' allege that the Defendants engaged in insider trading as a motive for making such false statements. As to the latter, the Plaintiffs have pleaded the trading dates, times, number of shares and proceeds from many of the sales. Thus, as detailed more fully below, the entire complaint need not be dismissed for want of particularity. *Cf. In re Green Tree Fin. Corp. Stock Litig.*, 61 F.Supp.2d 860, 871 (D.Minn.1999) (dismissing one allegation based on an unnamed source).

### B. Scienter.

Defendants move to dismiss the Class Complaint because, they argue, the Plaintiffs have inadequately alleged scienter.

### 1. Standard For Pleading Scienter in Security Fraud Cases.

The parties rely on *In re Comshare*, 183 F.3d 542 (6th Cir.1999) to define the standard for pleading scienter. *In re Comshare* was a consolidated securities fraud action arising from Comshare's restatement of certain financial statements after the company acknowledged that its original financial statements contained revenue recognition errors. The errors were based on a subsidiary's violation of company policy and generally accepted accounting principles ("GAAP") that proscribe the inclusion in financial statements of revenue from sales that were not assured. The subsidiary had been recognizing revenues from sales that were conditioned by side letter agreements allowing the buyer to back out of the sale under certain circumstances. When Comshares discovered the undisclosed agreements, it was forced to announce that it had overstated its recognized revenue causing the market value of the stock to drop significantly. The plain-

tiff-shareholders brought claims of securities fraud under 10(b) and based such claims on the accounting error and on bare allegations demonstrating a motive and opportunity. The district court granted the defendants' motion to dismiss the claims finding that the plaintiffs had failed to plead facts establishing a "knowing misrepresentation" by the defendants. The Court of Appeals affirmed the district court but rejected the lower court's rationale, adopting a more lenient standard for scienter, a standard that the plaintiffs had nonetheless failed to satisfy.

 Specifically, the *Comshare* Court held that:

we conclude that plaintiffs may plead scienter in § 10b or Rule 10b–5 cases by alleging facts giving rise to a strong inference of recklessness, but not by alleging facts merely establishing that a defendant had the motive and opportunity to commit securities fraud. Consequently, we must reject the reasoning of the district court to the extent it concluded that plaintiffs must "plead specific facts that create a strong inference of knowing misrepresentation on the part of the defendants" in order to establish a defendant's scienter in a securities fraud case brought under § 10(b) or Rule 10b–5.

183 F.3d at 549. Thus, to survive a Motion to Dismiss, plaintiffs are not required to "allege facts giving rise to a strong inference of knowing misrepresentation or intent." 183 F.3d at 552. Rather, "plaintiffs may meet PSLRA pleading requirements by alleging facts that give rise to a strong inference of *reckless behavior* but not by alleging facts that illustrate *nothing more* than a defendant's motive and opportunity to commit fraud." 183 F.3d at 551 (emphasis added).

 The Sixth Circuit defined "recklessness" as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man

would have known of it." 183 F.3d at 550. This definition demonstrates that recklessness is beyond negligence because it must be "highly unreasonable conduct" and an "extreme departure" from standards of ordinary care creating a danger that is "so obvious that any reasonable man would have known of it." On the other hand, reckless behavior is not intentional or knowing behavior because the danger need not have been actually known. As between negligence and intent, the Court made clear that recklessness is closer to intent than it is to negligence. 183 F.3d at 550, n. 7 ("recklessness ... is far from negligence and closer to a lesser form of intent.")

### 2. Application of the Scienter Standard.

#### a. Accounting Errors.

 The Defendants argue that SmarTalk's restatement of its financial statements and accounting errors underlying those restatements are not alone sufficient to give rise to a strong inference of scienter. The Plaintiffs argue that the magnitude of the accounting errors, all of which allegedly inflated SmarTalk's financial position, give rise to a strong inference of recklessness. In addition, Plaintiffs argue that the allegations of insider trading and the acquisition strategy also support such an inference. The Court concludes that the accounting errors, accompanying false public statements and reports, coupled with allegations of insider trading at rather high levels and suspiciously timed in proximity to the false statements, together, give rise to a strong inference of scienter.

Although allegations of accounting errors in violation of GAAP are, by themselves, insufficient to establish scienter for a securities fraud claim, *In re Comshare*, 183 F.3d at 553, such violations are relevant when combined with allegations to show that Defendants knew or could have known of the errors. *Id.* Moreover, such

failures, especially widespread failures as alleged in this case, combined with a drastic overstatement of financial results can give rise to an inference of scienter. *See, e.g., Rehm v. Eagle Finance Corp.*, 954 F.Supp. 1246, 1255–56 (N.D.Ill.1997)("the more serious the error, the less believable are [corporate] defendants protests that they were completely unaware of [the corporations] true financial status and the stronger is the inference that defendants must have known about the discrepancy"). The Plaintiffs have adequately alleged widespread and varied accounting errors that led to a drastic overstatement of SmarTalk's financial status. These violations support an inference of scienter.

Specifically, the Court concludes in this case that, irrespective of whether the faulty accounting practices violated GAAP, the substance and the circumstances surrounding the practices alleged create an inference of scienter. As an example, the Plaintiffs allege that the Defendants engaged in a "sham" transaction to sell a call center that was losing millions of dollars on a quarterly basis to a company that did not have the ability to pay. (Class Complaint at ¶¶ 75–79). The transaction was a sham because the Defendants allegedly knew that the purchasing company had no prior material operations or material assets. The result of this transaction, according to the Plaintiffs, was that Defendants were able to overstate SmarTalk's financial status thereby artificially inflating the value of SmarTalk stock. Certainly if these allegations are true, they would constitute securities fraud, regardless of whether such conduct constituted a GAAP violation.

As another example, the Plaintiffs allege that, as early as April 1997, SmarTalk insiders discussed the acquisition of ConQuest as an opportunity to hide millions of dollars of operating expenses in "one-time"

charges that would inflate future period earnings. In early 1997, Donaldson Lufkin and Jenrette ("DLJ"), along with Saloman, Smith, Barney ("SSB") was attempting to take ConQuest public via an IPO of its stock. Spangenberg, who came to SmarTalk from DLJ, was the lead banker on this effort and he, along with others, spent a significant amount of time evaluating ConQuest. As a result of a down turn in the market and a shareholder lawsuit, ConQuest decided not to go public. According to the Plaintiffs, DLJ still wanted to profit from the time it spent preparing the company for the public offering. Thus, in mid-April of 1997, SSB approached SmarTalk with the idea of acquiring ConQuest. At the same time Spangenberg left DLJ to become president of SmarTalk. The Plaintiffs allege that in September 1997, Folck, SmarTalk's CFO, commented that he was going to "dump" as many expenses into the acquisition charge as he possibly could. When SmarTalk acquired ConQuest in December 1997 for approximately $72 million in stock, defendants announced a "one-time" $64 million dollar charge. This charge was almost completely reversed in the restatement, which resulted in much lower reported annual earnings. (Class Complaint at ¶ 32). If true, these allegations demonstrate both a motive and at least a reckless state of mind as to the improper accounting for the ConQuest acquisition.[2] Thus, irrespective of whether the accounting errors violated GAAP, the substance of the alleged errors smacks of fraud and strengthens the inference of scienter.

Also important is the fact that the claims at issue are brought against the persons who allegedly committed the violations and not against the persons who failed to recognize violations committed by a third party. (*Id.* at ¶¶ 53—57). For instance, in

---

**2.** As a final example, the Class Complaint alleges that the Defendants improperly capitalized $10.9 million in marketing expenses thereby spreading these expenses over a number of years rather than properly incurring

these expenses in fiscal year 1997 and the first and second quarters of fiscal 1998. The effect of this practice is to create appearance of a higher level of profitability than actually exists. (Class Complaint at ¶¶ 40–46, 61–64).

the *Comshare* case, the claims were brought against a parent corporation for its failure to recognize one GAAP violation by its foreign subsidiary. In this case, the claims are against the persons who were primarily responsible for numerous and widespread accounting errors, errors that inherently contain indicia of fraud. This fact distinguishes the Plaintiffs' claims against the Individual Defendants from their claims against SmarTalk's outside auditor PricewaterhouseCoopers ("PwC"). The Court dismisses the 10(b) claims against PwC in a separate Opinion and Order. As stated in that opinion, the standard for recklessness is heightened for claims against outside auditors who are alleged to have missed the errors of others. (Opinion and Order #1 at 10–12). The failure to detect the accounting errors alone, even serious accounting errors, is insufficient to show that PwC acted with the required state of mind. Indeed, the accounting errors alone would be insufficient to create a strong inference that the Individual Defendants acted with scienter. However, the accounting errors do not stand alone with respect to the Individual Defendants. Not only did the Defendants commit the errors, but also, as discussed more fully below, they allegedly engaged in significant sales of personally held stock in close temporal proximity to the false statements based on the errors. The Court concludes that the Plaintiffs' allegations of insider trading together with the accounting errors are sufficient to support a strong inference of scienter.

### b. Insider Trading.

The Defendants argue that the allegations of insider trading do not support an inference of scienter because (i) the insider sales are neither unusual in timing or amount, (ii) the Plaintiffs miscalculate the percentage of the defendant's holdings sold, and (iii) the insider sales took place long before the end of the class period. The Plaintiffs argue that the insider trades are relevant to show scienter because (i) the insider trades were unusual or suspicious in timing or amount, and (ii) this is true even if the defendant's calculation of the percentage of the defendants' holding are assumed. The Court agrees with the Plaintiffs.

In *Comshare*, the Sixth Circuit's holding with respect to motive and opportunity is subtle. The Act requires scienter for liability and not just motive and opportunity; nonetheless, facts showing motive and opportunity may "on occasion" give rise to an inference of scienter. 183 F.3d at 551. Specifically, the Sixth Circuit acknowledged that while "a defendant's motive and opportunity to commit securities fraud does not constitute 'scienter' for the purposes of § 10(b)... facts regarding motive and opportunity may be 'relevant to pleading circumstances from which a strong inference of fraudulent scienter may be inferred,' *In Re Baesa*, 969 F.Supp. at 242, and may, on occasion, rise to the level of creating a strong inference of reckless or knowing conduct...." *In re Comshare*, 183 F.3d at 551. The Sixth Circuit also stated that "the charge of corporate officers engaged in insider sales at unusual or suspicious levels is probative of motive." *Id.* at 553 (citing *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 85 (2d Cir.1999)).

The *Stevelman* decision, on which the Sixth Circuit relied, provides guidance on the insider trading issues raised in this case. In *Stevelman*, the defendant officer, along with other insiders, sold company stock after publicly announcing optimistic statements of the company's performance. *Id.* at 81–82. Later, the company restated its prior financial statements because it changed its accounting policy for recognition of revenue. *Id.* at 83. The prior policy had violated GAAP. The district court dismissed the Complaint and the Amended Complaint and the Second Circuit Court of Appeals reversed.

Although the Circuit Court found that the violation of GAAP was not enough to show a strong inference of scienter, the court went on to find that the fact that the defendant, along with other officers of the corporation, had sold off large portions of stock holdings during the period of the

misrepresentations was probative of motive and supported a strong inference of scienter. *Id.* at 85–86. The court reached this conclusion despite the defendant's argument that the plaintiffs had failed to allege the percentage of stock sold by the other (non-defendant) officers, how much stock had been retained and whether some or all of the stock was sold at the inflated prices. Significant to the Court's reasoning was the fact that a number of officers unloaded large portions of their stock and at least some of the stock was sold in proximity to the optimistic statements. *Id.* at 86 (distinguishing *Acito v. IMCERA Group, Inc.,* 47 F.3d 47 (2d Cir. 1995)(where only one insider sold off stock)); *cf. Fecht v. Price Co.,* 70 F.3d 1078, 1084 (9th Cir.1995)(insider trading shows that corporate defendants knew of company's falling financial status at the time optimistic statements).

In this case, the Plaintiffs have made numerous specific allegations that a number of officers and directors sold a large amount of SmarTalk stock, constituting a large portion of their holdings, in close temporal proximity to the false statements in question. The Plaintiffs in this case have alleged insider trading in even great-

er detail than the *Stevelman* plaintiffs. In particular, the Plaintiffs have specifically alleged the percentage of stock sold and retained, as well as the timing of the Defendants' sales relative to the stock price and the misrepresentations. The Defendants' argument that the Plaintiffs miscalculated the percentage of the their holdings sold is not persuasive because even under the Defendants figures, the Defendants sold significant portions of stock. According to Defendants, Fielding sold 40% of his shares, Smith sold 40% of his shares, Teich sold 27% of his shares, Folck sold 11% of his shares and Lorsch sold 37% of his shares. For the most part, the sales occurred at various peaks in the stock price.[3] The Court concludes that these allegations, combined with the allegations of serious accounting errors which inflated the value of the stock, support a strong inference of scienter, at least at the pleading state of this litigation.[4]

## C. Liability for Speaking Defendants.

### 1. Miscellaneous points regarding the Statements.

■ Defendants argue that the speaking Defendants cannot be liable for the

---

**3.** The Defendants argue that the stock sales occurred long before SmarTalk declared bankruptcy and long before SmarTalk restated its financial data. This point is not persuasive. The important timing issue is the proximity of the sales to the false statements because this relationship supports an inference of fraud. The Defendants also argue that some of the individuals were not present at SmarTalk for portions of the relevant time period. This point is moot because the Plaintiffs have agreed that they are not seeking to impose liability on any of the individual defendants for time periods when those individuals were not present at SmarTalk.

**4.** This result is supported by another decision relied on by the Sixth Circuit in the *Comshare* decision: *In re Baesa Secs. Litig.,* 969 F.Supp. 238, 240 (S.D.N.Y.1997). The *Baesa* court stated that allegations of motive can be sufficient to support a strong inference of scienter but held that the plaintiffs' allegations were insufficient because they failed to allege any concrete benefits that could be realized by

one or more of the alleged false statements and wrongful disclosures. *Id.* at 243, n. 4 (citing *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1130 (2d Cir.1994).) In *Shields,* the court stated that "allegations of motive must do more than charge that executives' aim to prolong benefits of the positions they hold ... In looking for sufficient allegation of motive, we assume that the defendant is acting in his or her informed economic self-interest .... There is no claim here that false statements were made in an effort to sell off shares held by management." 25 F.3d at 1130. Thus, both *Baesa* and *Shields* recognize that specific allegations of concrete benefits realized by the defendant's false statements are sufficient to allege scienter. Unlike either of those cases, the Class Complaint in this case contains very detailed and specific allegations of the concrete benefits that the Defendants realized from their false statements. *See also Friedberg v. Discreet Logic Inc.,* 959 F.Supp. 42, 51 (D.Mass.1997); *In Re Orbital Sciences Corp. Secs. Litig.,* 58 F.Supp.2d 682, 687 (E.D.Va.1999).

statements that are alleged in the Class Complaint because the Class Complaint (1) does not sufficiently identify the speaker, (2) does not sufficiently identify facts that indicate why the statements were false, (3) contains paraphrased descriptions of some of the statements, and (4) seeks to impose liability for forward looking statements. The Court addresses these arguments in order.

The Plaintiffs allege that Defendants Spangenberg, Lorsch, Folck and Wooddell made numerous false statements in press releases and in conference calls with analysts during the relevant time frame. The Defendants contend that the Plaintiffs do not allege which of the four defendants made the statements. The Plaintiffs do identify two speakers for each conference call with analysts. The Court concludes that the Plaintiffs' allegations are sufficient to put the alleged speakers on notice of the statements attributed to them. *See Silicon Graphics*, 970 F.Supp. 746, 764 (N.D.Cal.1997) (finding sufficient allegations that identified the speaker as "company executives" but provided information regarding the time location and content of the statements); *Schlagal v. Learning Tree Int'l*, 1998 WL 1144581, *——–——, 1998 U.S. Dist. LEXIS 20306 at * 15–16

(C.D.Cal. Dec. 23, 1998). In any case, a high ranking company official cannot sit quietly at a conference with analysts, knowing that another official is making false statements and hope to escape liability for those statements. If nothing else, the former official is at fault for a material omission in failing to correct such statements in that context.

The Defendants assert that the plaintiffs do not cite any facts to suggest that any alleged statement was false when made. This is simply an inaccurate characterization of the Class Complaint.[5]

The Defendants also contend that the vast majority of the allegedly fraudulent statements is paraphrased. The Court has reviewed each of the paragraphs cited by the Defendants and concludes that the detail surrounding the paraphrased statements, and the paraphrasing of the statements itself is sufficient to put the Defendants on notice of what statements are alleged. So long as sufficient detail of the substance of the alleged statement is provided, the Plaintiffs need not allege statements in quotation form.[6] *Cf. Medalie v. FSC Secs. Corp.* 87 F.Supp.2d 1295, 1306 (S.D.Fla.2000)(when alleging fraud a plaintiff may either quote or paraphrase the alleged fraudulent misrepresentations

**5.** For example, Plaintiffs allege that on August 13, 1997 SmarTalk announced its results for the second quarter of 1997, results that were subsequently restated due to numerous accounting errors. (Class Complaint at ¶ 88). Plaintiffs allege that on that same day, in a press release, Lorsch stated, among other things, that, "in the first two quarters of 1997, our revenues exceeded 1996 revenues by more than 27%." The Complaint goes on to point out in detail how SmarTalk later restated its revenues for the second quarter of 1997, admitting that "financial results reported for the second quarter 1997 were materially overstated by $452,000 and that net loss was materially understated by more than $700,000 or 50%." The Complaint then refers back to the accounting errors detailed earlier. (*Id.* at ¶ 93). Similarly structured allegations of false press releases are made elsewhere in the Complaint. (*Id.* at ¶¶ 99(Lorsch ), 110(Lorsch & Folck)). Although the Defendants are correct when they

argue that a restatement alone is not sufficient to establish securities fraud, they cannot legitimately contend at this stage of the pleading that a restatement is not sufficient to establish that the original statements were not false when made.

**6.** For example, the Plaintiffs allege that on August 14, 1997, the day after the releasing SmarTalk's second quarter 1997 results, Lorsch and Spangenberg spoke to investors, money managers and analysts, reiterated the false financial results for the second quarter of 1997 and, based on these false results, made a number of misrepresentations which are paraphrased including statements to the effect that SmarTalk was successfully controlling costs and margins were increasing. (Class Complaint at ¶¶ 90). Similarly structured allegations of false statements in conference calls are made throughout the Complaint. (*Id.* at ¶¶ 96–97, 100–101, 107–08, 110–112).

made by the defendant.)(citing *Seville Indus. Mach. v. Southmost Mach.*, 742 F.2d 786, 791 (3d Cir.1984) (list containing allegations of fraud describing nature and subject of statements found to be sufficient, even where precise words used were not alleged)).

Last, the Defendants allege that there can be no liability for forward looking statements unless the Plaintiffs prove that the statements were made with actual knowledge that the statement was false or misleading. *See* 15 U.S.C. § 78u–5(c)(1)(B)(I). While some allegations involve forward looking statements, many of the Plaintiffs' allegations do not; to this extent, some of the claims involving forward statements may be surplusage. Such fact does not entitle Defendants to a dismissal of the claims in their entirety. In any case, the Court has concluded that Plaintiffs have adequately pleaded scienter based on their allegations of accounting errors together with insider trading. The Court concludes that these allegations are, for pleading purposes, sufficient to show scienter for both statements involving historic data as well as forward-looking statements.

### 2. The Entanglement Theory.

■ Defendants contend that Plaintiffs' allegations regarding analyst statements are not sufficiently pleaded. In particular, the Defendants argue (1) no additional liability attaches to the extent that the statements made to the analysts consists of precisely the same purported misstatements made to the public and (2) to the extent that the Plaintiffs seek to hold the Defendants liable for information disseminated by the analysts, such as forecasts, they have failed to adequately allege "entanglement." Under the "entanglement" theory of liability, corporate officers and directors can be found liable for unreasonable, third-party forecasts only if they have sufficiently entangled themselves with the forecasts by placing their imprimatur, express or implied, on the projections. *See, e.g., In Re Stratosphere Corp.*

*Secs. Litig.,* 1 F.Supp.2d 1096, 1115 (D.Nev.1998). Plaintiffs argue (1) that the Defendants are directly liable under Rule 10b–5 for providing false or misleading information to third parties securities analysts, and (2) that the entanglement theory has been rejected by a number of Courts.

First, to the extent that the Defendants' statements to analysts overlap with earlier statements they made, this presents an issue of causation the resolution of which is better left for the later stages of this litigation.

■ Next, the Court agrees with the Plaintiff that the Defendants can be directly liable for providing false or misleading information to third parties analysts. The primary case on which the Defendants rely addressed only the issue of whether corporate defendants can be liable for analysts interpretations of defendant's truthful statements. *See In re Syntex Secs. Litig.,* 95 F.3d 922 (9th Cir.1996). The Ninth Circuit has distinguished *Syntex* on this basis and has held that corporate defendants can be liable for "for false and misleading statements to securities analysts with the intent that the analysts communicate those statements to the market." *Cooper v. Pickett,* 137 F.3d 616, 624 (9th Cir.1997); *see also Warshaw v. Xoma Corp.,* 74 F.3d 955 (9th Cir.1996); *Schlagal,* 1998 WL 1144581 at *— – —, 1998 U.S. Dist. LEXIS 20306 at *18–19. Even a case on which the Defendants primarily rely for their argument based on the entanglement theory recognizes the distinction drawn in *Cooper. See In Re Stratosphere Corp. Secs. Litig.,* 1 F.Supp.2d 1096, 1115 (D.Nev.1998); *see also New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.* 1999 U.S. Dist. LEXIS 12999 at *21 (W.D.KY. Aug. 18, 1999)(expressing rationale for rejecting entanglement theory).

In this case, the Defendants are alleged to have made false and misleading statements to the analysts. Defendants do not argue or assert that the analysts misinter-

preted what was said to them. Nor do the Plaintiffs' allegations suggest any such misinterpretation. Thus, the Court agrees with the Plaintiffs and finds that the Defendants can be liable for the analysts' statements without having to show the elements of the entanglement theory.

### D. Group Pleading and the Non–Speaking Defendants.

The Plaintiffs seek to impose liability on the Nonspeaking Defendants under various doctrines including the "group published" doctrine. The Defendants move to dismiss the claims against the Nonspeaking Defendants arguing both that the group published doctrine did not survive the passage of the PSLRA and that even if the doctrine did survive the PSLRA, it does not apply to create liability in this case. The Court disagrees with the Defendants.

■ The group published doctrine applies in cases of corporate fraud where officers and directors of the corporation are held liable for false statements found in group published documents. The doctrine has been summarized as follows:

> In cases of corporate fraud where the false and misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other "group-published information," it is reasonable to presume that these are the collective actions of the officers [citations omitted]. Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations.

*Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987).

■ First, although the case law is in conflict on the issue, the Court concludes that the group pleading doctrine survived the PSLRA. *Compare In re Silicon Graphics, Inc. Secs. Litig.*, 970 F.Supp. 746, 759 (N.D.Cal.1997) (recognizing existence of group pleading doctrine after the PSLRA); *In re Digi Int'l*, 6 F.Supp.2d 1089, 1101 (D.Minn.1998); *In re Stratosphere Corp. Secs. Litig.*, 1 F.Supp.2d 1096, 1108 (D.Nev.1998); *Powers v. Eichen*, 977 F.Supp. 1031, 1040 (S.D.Cal. 1997); *In re Health Mgmt. Securities Litig.*, 970 F.Supp. 192, 208–09 (E.D.N.Y. 1997); *with, e.g., Allison v. Brooktree Corp.*, 999 F.Supp. 1342, 1350 (S.D.Cal. 1998) (questioning the continuing vitality of the group pleading doctrine).

■ Second, the Defendants argue that even if the group published doctrine survived the PSLRA, it does not apply to them for various reasons. The Court agrees with the Defendants that the doctrine does not apply to oral statements. There can be no inference that an oral statement of one officer represents the "collective action" of others. *Wool* 818 F.2d at 1440; *In re Gupta Corp. Securities Litig.*, 900 F.Supp. 1217, 1239–40 (N.D.Cal. 1994); *Schlagal,* 1998 WL 1144581 at *——, 1998 U.S. Dist LEXIS 20306 at *15. Thus, Plaintiffs may not proceed under the group published doctrine on the basis of alleged oral statements.[7]

■ The Defendants argue the group published doctrine does not apply to Hamburger and Teich because these two corporate officers are not alleged to have signed any of the group published documents or to have "published" them. The Defendants argue that plaintiffs cannot rely on the conclusory assertions that these two Defendants prepared and/or reviewed the false press releases and SEC filings. The Defendants also argue that the outside directors Alfi, Fielding and Smith are alleged to have signed only the 1997 financial statements, which is not sufficient to

---

7. The effect of this point is limited to the Speaking Defendants because the Class Complaint fails to identify with requisite specificity any oral statement made by the Nonspeaking Defendants.

plead a claim against them. For similar reasons, Defendants contend that they cannot be liable as "control persons." The Court disagrees.

"To rely upon the group published information presumption, Plaintiffs' complaint must contain allegations that an outside director either participated in the day-to-day corporate activities, or had a special relationship with the corporation such as participation in the preparing or communicating group information at particular times." *In re GlenFed, Inc.,* 60 F.3d 591, 593 (9th Cir.1995). In this case, the Plaintiffs have pleaded each alleged misrepresentation with particularity and where possible, they have extended such particularity to individual Defendants. *See Wool,* 818 F.2d at 1440.

■ Contrary to the Defendants' assertion, a plaintiff may satisfy the group published doctrine by alleging that an individual defendant signed a publication. *See In re ValuJet Inc. Secs. Litigation,* 984 F.Supp. 1472, 1478 (N.D.Ga.1997). Moreover, the pleading standards under the group published doctrine and control person liability are not as high as the Defendants assert. The Plaintiffs have alleged that all of the Defendants are high level officers and directors who (1) prepared and/or reviewed the false press releases and SEC filings, (Class Complaint at ¶ 21); (2) had the ability to speak on behalf of SmarTalk; (3) had access to adverse nonpublic information about SmarTalk's business, finances, products, markets and present and future business prospects, including the information that rendered the statements in question false, as particularized throughout the Complaint, (*Id.* at ¶¶ 22, 26); and, (4) were "hands on" managers. Moreover, Alfi, Fielding and Smith all signed the Form 10–K for 1997 (*Id.* at

¶ 113), Alfi and Fielding were members of the Audit Committee; and Hamburger, who was General Counsel, and Teich, who was Executive Vice President, were high level officers of SmarTalk. (¶ 21). These allegations are sufficient to allege fraud under the group published doctrine as to all of the Non-speaking Defendants. *See Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1254 (10th Cir.1997); *Schaffer v. Evolving Sys. Inc.,* 29 F.Supp.2d 1213, 1225 (D.Colo.1998); *In re Stratosphere Corp. Secs. Litig.,* 1 F.Supp.2d 1096, 1108 (D.Nev.1998); *Zuckerman,* 4 F.Supp.2d at 626–27 n. 4. In addition, the court concludes that these allegations are sufficient to plead control person liability.[8] Both of these conclusions may, however, be refuted at the summary judgment stage of this litigation.

### E. Insider Trading

■ In addition, in their Third Claim for Relief the Plaintiffs allege that Defendants Smith and Alfi are liable for violating Section 20(a) of the Act, 15 U.S.C. § 78t–1(a), by selling SmarTalk stock while in possession of material non-public information. The Defendants have based their Motion to Dismiss these claims on the their assertion that the Plaintiffs failed to adequately allege a primary violation of Rule 10(b), a prerequisite for Section 20(a) liability. For the reasons set forth above, the Court has concluded that Plaintiffs have adequately alleged a 10(b) violation. In addition, the Defendants argue that the Plaintiffs cannot use a theory of insider trading to attribute allegedly false statements to the Defendants. As the Court reads the Complaint, the insider trading theory is not based on the false statements, nor is it an attempt to attribute such statements to the Defendants. Rath-

---

**8.** This conclusion specifically pertains to the Plaintiff's Second Claim for Relief. However, to the extent that the Plaintiffs have alleged that any of the Individual Defendants engaged in a "scheme" theory of securities fraud that does not depend on insider trading, the Court agrees with the Defendants that *Central Bank* of *Denver, N.A. v. First Interstate Bank of Denver N.A.* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) refutes such a theory. Specifically, *Central Bank* held that there is no aider and abettor civil liability for securities fraud.

er, it is based on the Defendants' alleged sale of stock while in possession of the information that made the statements false. The Court concludes that the Plaintiffs' allegations are sufficient to plead such a theory. Therefore, the Court denies the Defendants' Motion to Dismiss the Third claim for relief. Again, this conclusion can be refuted at the summary judgment stage of this litigation; but, at the pleading stage, the Court concludes that the Plaintiffs have stated a cause of action.

## IV. Analysis of the Investor Defendants' Motion to Dismiss.

### A. 10b liability.

In their First Claim for Relief, Plaintiffs assert a claim for a violation of section 10b and Rule 10b–5 against the Investor Defendants. According to the Complaint the alleged basis for this claim is that the Investor Defendants knew of the SmarTalk's actual business condition, (¶ 151), participated in the misstatements alleged, (¶ 151–52), and employed deceptive devices. (¶ 153 (a)).

The Investor Defendants move to dismiss the Complaint because they are not alleged to have made any of the false statements. They contend that there is no basis for holding them liable for statements they did not make. In response the Plaintiffs argue that (1) the Investor Defendants can be liable under the group pleading doctrine, (2) the Investor Defendants are liable because they participated in a deceptive device as a part of a scheme to defraud. The Court agrees with the Investor Defendants that there is no basis to hold them liable for the misrepresentations. However, the Court agrees with the Plaintiffs that the Investor Defendants could be liable on a deceptive device theory.

First, as stated above, "to rely upon the group published information presumption, Plaintiffs' complaint must contain allegations that an outside director either participated in the day-to-day corporate activities, or had a special relationship with the corporation such as participation in the preparing or communicating group information at particular times." *In re GlenFed, Inc.*, 60 F.3d 591, 593 (9th Cir. 1995). Assuming *arguendo* that the doctrine can apply to mere shareholders, the Plaintiffs have failed to allege that the Investor Defendants participated in the day-to-day operations or that they participated in preparing or communicating group information. In support of their position, the Plaintiffs argue that their allegation that the Investor Defendants sold stock at an artificially inflated price knowing of the fraud is sufficient to bring them within the group published doctrine. These allegations plainly fail because allegations that the Defendants sold stock with inside information are insufficient to show day to day control or participation in the misstatements. Consequently, the Plaintiffs cannot rely on the group publication doctrine to hold the Investor Defendants liable.[9]

The Plaintiffs next claim that the Investor Defendants may be liable under a "scheme" theory. "Scheme" theories of relief for securities fraud are limited because there is no longer aider or abettor civil liability in the securities fraud area. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver N.A.* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). The Plaintiffs, however, accurately cite *Cooper v. Pickett*, 137 F.3d 616, 624–25 (9th Cir.1997) for the proposition that even after *Central Bank*, liability still exists for

---

9. The Plaintiffs cite to *Auslender v. Energy Management Corp.*, 832 F.2d 354, 356 (6th Cir.1987) which stands for the proposition that "affiliates" of a corporation can be liable for securities fraud as aiders and abettors even if no particular connection between the affiliate and the fraudulent conduct is demon-

strated. *Auslender* is distinguishable for a number of reasons including the fact that it was decided prior to *Central Bank of Denver, N.A. v. First Interstate Bank of Denver N.A.* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), which rejected aider and abettor liability as a viable theory for liability.

nonspeakers where a group of defendants committed a manipulative or deceptive act in furtherance of a fraudulent scheme. *Cooper* is otherwise inapplicable here because the defendants in that case, unlike the defendants here, actually made the false statements in question. *Id.*

Nonetheless, the Plaintiffs correctly assert that insider trading can constitute an actionable "deceptive device" for the purposes of Rule 10(b). *See United States v. O'Hagan,* 521 U.S. 642, 651, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997); *In Re Silicon Graphics, Inc. Securities Litig.,* 970 F.Supp. 746, 762 (N.D.Cal.1997) (finding a "scheme" theory of relief viable if the defendants engaged in insider trading).[10]

In *O'Hagan,* the Court stated:

Under the 'traditional' or 'classical theory' of insider trading liability, § 10(b) and Rule 10b–5 are violated when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic information. Trading on such information qualifies as a 'deceptive device' under § 10(b) ... because a 'relationship of trust and confidence [exists] between the shareholders of a corporation and those insiders who have obtained confidential information by reason of their position with that corporation.' *Chiarella v. United States,* 445 U.S. 222, 228, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). That relationship ... 'gives rise to a duty to disclose or abstain from trading' because of the necessity of preventing a corporate insider from ... taking unfair advantage of ... uninformed shareholders.' *Id.* The classical theory applies not only to officers, directors, and others who temporarily become fiduciaries of a corporation." *See Dirks v. SEC,* 463 U.S. 646, 655, n. 14, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983).

521 U.S. at 651–52, 117 S.Ct. 2199. Thus, the alleged insider trading of the Investor Defendants can serve as a basis for liability under 10(b) if the Plaintiffs establish the Investor Defendants owed a duty to the shareholders to disclose material nonpublic information or otherwise abstain from trading. Because the Investor Defendants are not insiders, Plaintiffs must establish that they had "temporarily become fiduciaries of a corporation" in order to establish their duty to disclose or abstain.

Plaintiffs cite *Chiarella v. United States,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980) among other cases to support their assertion that the Investor Defendants were under such a duty to disclose the information or abstain from trading. In *Chiarella,* the court noted that " 'Tippees' of corporate insiders have been held liable under § 10(b) because they have a duty not to profit from the use of inside information that they know is confidential and know or should know came from a corporate insider." 445 U.S. at 230, n. 12, 100 S.Ct. 1108.

Subsequently, in *Dirks v. SEC,* 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983), the Court found that a tippee's duty to disclose or abstain "is derivative from that of the insider's duty," and thus a tippee is only liable under 10(b) or Rule 10b–5 for trading on the basis of material nonpublic information if the inside tipper breached a fiduciary duty in disclosing to the tippee. In considering whether the disclosure constituted such a breach of duty, the Court considered whether the inside tipper personally benefitted directly or indirectly from the disclosure to the tippee. The Court stated that "not only are insiders forbidden by their fiduciary relationship from personally using undisclosed corporate information to their advantage, but they also may not give such information to an outsider for the same improper purpose of exploiting the information for their personal gain." 463 U.S. at 659–60, 103 S.Ct. 3255. This is the theory of liability that

---

**10.** In order to state a claim for insider trading, Plaintiffs must allege that they bought stock contemporaneously with the Investor Defendants' sale of stock. *Silicon Graphics,* 970 F.Supp. at 760–61. Plaintiffs have fulfilled this requirement. (*Id.* at ¶ 163).

may reach the Investor Defendants in this case.

The Plaintiffs allege SmarTalk Partners and Youness sold stock held by SmarTalk Partners on the basis of the inside information they learned from Alfi. Given the Court's findings above, this would include information that pertained to SmarTalk's true financial status. As alleged in the Complaint, Alfi, as the inside tipper and part owner of SmarTalk Partners, personally benefitted either directly or indirectly from the disclosure because the profit from the sale of SmarTalk Partners' stock-holdings worked to his personal financial benefit. Thus, the Court concludes that the Plaintiffs have sufficiently pleaded a 10(b) claim against the Investor Defendants, albeit a claim that is limited to the allegations of insider trading.

### B. Section 20A "Control Person" Liability.

In their Second Claim for Relief, Plaintiff seek to hold Alfi and Youness liable as control persons under § 20(a) of the Act for the wrongful conduct of SmarTalk Partners. (Class Complaint at ¶ 157). Section 20(a) provides as follows:

> Every person who, directly or indirectly, controls any person liable under any provision of [the Exchange Act] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly induce the act or acts constituting a violation or cause of action.

15 U.S.C. § 78t(a).

The Court has concluded that the only viable theory of wrongful conduct on the part of SmarTalk Partners is the insider "tippee" trading theory discussed above. Thus, the Plaintiffs' Second claim for relief against Youness and Alfi is limited to liability for SmarTalk Partners' alleged insider trading.

Defendant's argue, however, that the Plaintiffs have failed to allege with particularity any facts meeting the elements of a control person claim under Section 20(a). At a bare minimum, to establish control person liability, a plaintiff needs to allege facts that permit a reasonable inference that the defendant actually participated in the operations of the controlled person in general, and that the defendant possessed the power to control the specific transaction or activity upon which primary violation is predicated. *See Sanders Confectionery Prods. v. Heller Financial,* 973 F.2d 474, 484 (6th Cir.1992). Defendants assert that Plaintiffs fail to plead either of these elements.

Plaintiffs have pleaded generally that Alfi was a "partner" of SmarTalk Partners LLC, that he was a "controlling person" of SmarTalk Partners LLC, that SmarTalk Partners LLC was his "alter ego" and that he (along with Youness) caused SmarTalk Partners to sell the stock in question. Similarly, Plaintiffs have pleaded that Youness was an "owner and manager" of SmarTalk Partners LLC and also that Youness caused SmarTalk Partners LLC to sell the stock in question.[10] The Court concludes that these allegations are minimally sufficient to plead a theory of control person liability because they establish, at least for the purposes of pleading, both participation in the transactions in question and a broader level of control over SmarTalk Partners LLC. *See Sanders Confectionery Prods. v. Heller Financial,* 973 F.2d 474, 486 (6th Cir.1992). Consequently, the Court DENIES the Investor Defendants' Motion to Dismiss the Plaintiffs' Second Claim for Relief.[11]

---

**10.** Plaintiffs appear to argue in their brief that SmarTalk Partners LLC can be liable for SmarTalk's misconduct. The Court rejects this contention.

**11.** As an alternative argument, Plaintiffs assert that under an "alter ego" or "pierce the corporate veil" theory, Alfi and Youness may be liable for the wrongdoing of SmarTalk

### C. Claim Against Lisa Marino.

The sole basis for the Investor Defendants' Motion to Dismiss the claim against Lisa Marino is the Plaintiff's failure to state a cause of action against the SmarTalk Partners or Youness.[12] Because the Court has concluded that the Plaintiffs have adequately stated a cause of action against SmarTalk Partners LLC, the Court DENIES the Defendants' Motion.

### V. CONCLUSION.

Upon consideration and being duly advised, the Court DENIES the Individual Defendants Motion to Dismiss.

In addition the Court DENIES the Investor Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

---

Partners LLC. *See Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos.,* 67 Ohio St.3d 274, 275, 617 N.E.2d 1075 (1993) ("the corporate form may be disregarded and individual shareholders held liable for the wrongs committed by the corporation."). Given the Court's conclusion that they have sufficiently pleaded control person liability, the Court need not reach this argument.

12. The allegations against Marino present the classic example of a beneficiary of another's fraud. She is in this case only to determine if she must disgorge herself of those benefits.